GRAND FRATERNITY V. MATTIE K. MELTON

No. 1935.  Decided April 7, 1909.

**1.—Jury—Undisputed Evidence.**

The jury have no right to arbitrarily reject the evidence of an unimpeached witness in the absence of any discrediting circumstance; and where the evidence establishes a defense to a moral certainty it is error to submit the issue to them as a doubtful one.  The judge should direct a verdict for defendant.   (P. 402.)

**2.—Same—Benefit Insurance—Suicide.**

In a suit upon a benefit insurance certificate, void by its terms in case of self-destruction by insured "sane or insane," the evidence is considered and held to clearly establish the fact that insured voluntarily shot himself, to preclude the submission to the jury of the issue as to whether his act was intentional, to justify a peremptory instruction to find for defendant, and to require the Supreme Court to reverse and render for defendant a judgment of recovery in favor of the beneficiary, supported by a finding of the jury that the act was not intentional, which the trial and appellate courts had refused to set aside.   (Pp. 399-402.)

Error to the Court of Civil Appeals for the Second District, in an appeal from Tarrant County.

Mrs. Melton sued the Grand Fraternity and had judgment.   Defendant appealed, and on affirmance obtained writ of error.

*Buck, Cummings, Doyle & Bouldin* and *J. J. Eckford,* for plaintiff in error.—When the evidence as to the only fact in the case is such as to lead the minds of all reasonable men to the same conclusion, the court should peremptorily instruct the jury.   Joske v. Irvine, 91 Texas, 581; Renegar v. United Moderns, 90 S. W., 1182.

Where the evidence is overwhelmingly against the verdict and no evidence whatever to support the verdict, the verdict should be set aside.   Galveston, H. & H. Ry. Co. v. Jones, 73 Texas, 235; Willis Bros. v. McNeil, 57 Texas, p. 436; Texas, etc., Ry. Co. v. Jarrell, 60 Texas, 268; Notes on Texas Reports, vol. 3, p. 177, on the case of Willis v. McNeil, 57 Texas, 465-480.

*Beckham & Beckham,* for defendant in error.

MR. JUSTICE BROWN delivered the opinion of the court.

On the 28th day of October, 1901, the Supreme Lodge of the United Moderns, a foreign corporation, issued to J. H. Melton a certificate of membership whereby it agreed upon the death of the said Melton to pay $1,000 to Mattie Ketchum Melton.   The constitution of the United Moderns contained this provision:   "If any member dies . . . by self-destruction, whether sane or insane, . . . then in such case the beneficiary certificate, together with all claims by reason of membership, shall be null and void."   The United Moderns and the Grand Fraternity consolidated into one concern under the name of the latter on the 19th day of November, 1903, and the Grand Fraternity issued to Melton, in lieu of the certificate which had been issued by the United Moderns, a certificate

which contained this provision: "The consolidated order the Grand Fraternity accepts you as a member and assumes and will pay all benefits, provided for in the said beneficiary certificate in the manner and as prescribed in the constitution and laws, rules and regulations of the United Moderns."

Melton paid all dues and on the 8th day of February, 1905, was in good standing in the order, on which day he shot himself, inflicting a wound from which he died. This suit was instituted by the defendant in error upon the certificate above described. The only defense set up by the plaintiff in error was that J. H. Melton had taken his own life, and that therefore it was not liable on the certificate. The court submitted the case to the jury upon one issue in the following affirmative and negative form, which the attorneys agreed presented the only issue of fact, and the jury answered as stated below:

"In this case I submit the following special issue, to wit:

"Did Jesse Melton come to his death by self-destruction?

"Upon this issue, if you believe from the evidence that Jesse Melton intentionally shot himself in the breast and as a direct consequence thereof, he died, you will answer this question, 'Yes.'

"Unless you find from the evidence that Jesse H. Melton did intentionally shoot himself in the breast you will answer this question, 'No.'

"Upon this issue submitted to you the burden of proof is upon the defendant to show the affirmative of said issue and if you do not believe by a preponderance of the evidence that Jesse H. Melton came to his death by self-destruction then you will find in the negative on the issue submitted.

"You are the exclusive judges of the credibility of the witnesses, of the weight of the evidence, and of the facts proved.

"Irby Dunklin, Judge."

The jury answered "No."

The conclusion reached by this court renders it unnecessary to discuss the question presented on the rulings of the trial court in excluding declarations of Melton, but we do not wish to be understood as approving such action. Judgment was rendered in favor of the plaintiff against the Fraternity for the amount of the policy with interest thereon. Upon appeal to the Court of Civil Appeals of the Second District, a majority of the court reversed the judgment and remanded the case. Upon motion for rehearing, the membership of the court having been changed by the resignation of Mr. Justice Stephens and the appointment by Judge Pressler, a majority of the court, as then constituted, granted the motion for rehearing and affirmed the judgment of the District Court.

The evidence which bears upon the issue submitted by the court is, in substance, as follows: L. H. Jewell was the first witness who saw Melton after he was shot; he was then lying upon a couch in a room of his home with a wound in his left breast near to the nipple, a pistol was lying within two or three feet of him on the floor. Jewell had a conversation with him, which was by agreement

of attorneys submitted to the jury as testimony in the following form: "Melton told Jewell when he went there that he had shot himself and that he was up against it and owed on his home; that he asked for the pistol and said he wanted to blow his brains out." Dr. Pollock, the physician attending Melton at the time of his death, stated that Melton said to him: "I wish I had shot myself in the head," or he said, "I wish it had shot me in the head." "Now, what he said I don't know, but he said something about shooting himself which led me to believe that no one had shot him, but that he had shot himself, whether accidentally or not I was unable to make up my mind."

When the plaintiff proved that J. H. Melton had died she established a *prima facie* right to recover. The burden was upon the Fraternity to prove that Melton shot himself and that he did it intentionally. Union Mutual Life Insurance Co. v. Payne, 105 Fed. Rep., 172; Home Benefit Society v. Sargeant, 142 U. S., 691.

The Fraternity introduced Jewell, who testified that he heard that a man was shot and went into the house where Melton lived to see about it. Mrs. Melton was in the house; J. H. Melton was lying upon a couch with a wound in his left breast and a pistol on the floor within a few feet of the couch. Counsel for the Fraternity asked of Jewell this question: "Without going over details of your testimony I want to ask you if Mr. Melton stated to you the cause for his doing what he had done?" The question was objected to because it called for the statements of Melton and the court sustained the objection for that reason, but subsequently counsel agreed to submit to the jury as the evidence of Jewell this statement: "Judge Beckham says he is willing to put it in as Jewell's testimony, not waiving his objection that Melton told Jewell when he went there that he had shot himself and that he was up against it and owed on his home and that he asked for the pistol and said he wanted to blow his brains out." Interpreting the statements as an answer to the question it means that Melton told Jewell that he (Melton) shot himself. Why did he shoot himself? He shot himself because he was "up against it and owed on his home." Did Melton shoot himself intentionally? He asked for the pistol and said he wanted to blow his brains out. The conditions which have caused so many unfortunates to go the same way were present in his case, and the intention to end his life was so fixed that it dominated his mind and directed his action into the very shadow of death. Dr. Pollock testified to practically the same facts as did Jewell. The doctor said, however, that he was not sure whether Melton said he shot himself or that "it"—the pistol—shot him. It is plain that Melton did not say the pistol shot him, for whether it was accidental or intentional he must have done the shooting himself. The facts are consistent with suicide, intentional shooting of himself, and inconsistent with an accidental killing. We have sought for a fact or circumstance which would sustain a conclusion that the shooting was accidental, but our search has been in vain. The judge of the District Court submitted to the jury the single issue, was the killing intentional?

The charge was favorable to the defendant, therefore the judgment must stand unless the evidence establishes that the shooting was intentional to that degree of conclusiveness which precludes a reasonable doubt to the contrary, that there must be no room for fair and reasonable minds to reach different conclusions from the evidence. This is the rule that governs in this court.

The jury were the judges of the credibility of the witnesses, but they had not the right to arbitrarily reject the evidence of an unimpeached witness against whom there was no discrediting fact or circumstance. Jewell and Pollock appear from their testimony to have been friends to Melton and there is nothing to show that they bore any relation whatever to the Fraternity that would justify a suspicion against their truthfulness.

The jury were the judges of the weight of the evidence, but they could not lawfully deny proper weight to undisputed facts with no suspicion cast upon them. If the jury had the power to discredit any and every witness and to disregard any and all facts their verdicts could not be set aside by the judge nor reviewed by the Appellate Courts. Yet the law enjoins it upon the courts to set verdicts aside when contrary to the evidence or the law.

The trial judge should not have submitted the case to the jury because the evidence did not raise an issue on the intention of Melton in shooting himself. By the evidence the Fraternity established to a moral certainty that Melton shot himself with intent to destroy his life, inflicting a wound from which he died. As a matter of law the defendant below was entitled to the verdict and the trial judge should have directed the jury to return a verdict for the defendant. It is ordered that the judgments of the District Court and Court of Civil Appeals be reversed and that judgment be here entered for the plaintiff in error.

*Reversed and rendered.*