## CORNISH et al. v. NANCE MOTOR CO. et al.
### (No. 12028.)

Court of Civil Appeals of Texas. Fort Worth. Oct. 13, 1928.

Rehearing Denied Jan. 19, 1929.

McFarlane & McFarlane and Marshall & King, all of Graham, for appellants.

Johnson, Moore & Lindsey, of Fort Worth, George Berry, of Graham, Carrigan, Britain, Morgan & King and Nat Friedman, all of Wichita Falls, C. W. Johnson, Jr., Fred T. Arnold, and Binkley & Binkley, all of Graham, and A. W. Loveland, of Dallas, for appellees.

DUNKLIN, J. The Nance Motor Company, who was duly incorporated under the laws of the state of Texas, operated an automobile business in the town of New Castle. It owned certain furniture and fixtures and a stock of merchandise in the operation of its business, and also held an agency for the sale of Chevrolet cars. W. F. Nance was president

and general manager of the Nance Motor Company and had exclusive control of its business. L. G. Stizes was its vice president and Don E. Beck was its secretary, both of whom were stockholders. On March 20, 1927, R. L. Cornish and S. S. Bates entered into a contract with the Nance Motor Company, acting through its president and general manager, W. F. Nance, for the purchase of all the assets of the Nance Motor Company, for a consideration of $3,386.38, of which amount $1,986.38 was paid in cash and the balance of $1,400 was evidenced by four notes, dated March 28, 1927, each for the sum of $350, due and payable on the 1st day of May, June, July, and August, respectively. All of said notes were made payable to the Nance Motor Company. The Nance Motor Company sold and transferred the four notes just mentioned to the First State Bank of New Castle, by W. F. Nance. Two of those notes were later paid by Cornish and Bates. Three suits grew out of those transactions. The first suit was by Cornish and Bates against the Nance Motor Company and W. F. Nance, L. G. Stizes, and Don Beck. For cause of action in that suit plaintiffs alleged that at the time of the sale of the Nance Motor Company to plaintiffs, noted above, that corporation was insolvent, and that plaintiffs were induced to make the purchase by the false and fraudulent representations then made by Nance, Stizes, and Beck, to the effect that the corporation owed no debts of any character.

Plaintiffs alleged that by reason of such misrepresentations they took no steps to comply with the Bulk Sales Law, and that the creditors of the corporation were demanding of plaintiffs payment of the debts owing to them by the corporation under and by virtue of the fact that the purchase was made in violation of the provisions of that law. Numerous creditors intervened in that suit upon demands claimed to be due them from the corporation and asked for judgment against plaintiffs, under the provisions of articles 4001 and 4002, Rev. Statutes of 1925, which provisions are known as the Bulk Sales Law.

Another suit was instituted by the First State Bank of New Castle against Cornish and Bates to recover on two of the notes executed by them to the Nance Motor Company and transferred to the bank. A third suit was instituted by the Texas Company against the Nance Motor Company upon an open account for merchandise sold.

All three of those suits were by order of the court consolidated and tried as one; the trial being before a jury.

The Nance Motor Company, W. F. Nance, and Stizes all made default, and a judgment was rendered against them in favor of plaintiffs for the sum of $3,743.34, and in favor of all the interveners for the respective sums sued for. The bank was awarded a judgment against the plaintiffs on the two notes sued on. Plaintiffs were denied any recovery against the defendant Don Beck on the cause of action asserted against him.

The record shows that, upon application of plaintiffs, a receiver was appointed to take charge of the assets of the Nance Motor Company.

The record further shows that after plaintiffs made the purchase from the Nance Motor Company they sold certain portions of the assets so purchased, the invoice prices of which aggregated $1,100. After making such sales, plaintiffs discovered the insolvent condition of the Nance Motor Company, and they then returned to it the balance of the assets which had been purchased by them and which had been invoiced to them in the aggregate sum of $2,286.38, for which amount the Nance Motor Company gave plaintiffs credit.

Judgment was rendered in favor of interveners against the plaintiffs for $1,100 to cover the assets disposed of by them, as shown above. There was a further decree that all assets of the corporation should be applied first to the satisfaction of the claims of the interveners, to the exclusion of the judgment awarded to the plaintiffs against the corporation, Nance, and Stizes.

It is unnecessary to further notice the numerous interveners, the character of their claims, and the fact that some were allowed as secured claims and some as unsecured claims, since no complaint is made of the judgment with respect to such matters.

This appeal has been prosecuted by plaintiffs only, and the errors assigned will now be discussed.

■ We overrule appellants' assignment of error to the refusal of the court to permit them to share in the present assets of the company on an equal pro rata basis with the general creditors mentioned above. To sustain that contention, manifestly, would be to do violence to the plain specific language of articles 4001 and 4002 of the Bulk Sales Law, enacted for the benefit of such general creditors as against purchasers at sales made in violation of the terms of that law. 27 Corpus Juris, 887; Farrar v. Lonsby Lumber & Coal Co., 149 Mich. 118, 112 N. W. 726.

■ In their pleadings, plaintiffs alleged that defendant Don Beck was present at the time Fred Nance made the false and fraudulent representations, to the effect that the Nance Motor Company owed no debts and thereby induced plaintiffs to purchase all the business of that company, together with all its assets; that he heard Nance make such misrepresentations and did not deny the truth thereof, but remained silent and thus acquiesced therein, holding the position of secretary of the company at the time; and that, therefore, he, Beck, was equally liable with Nance to plaintiffs for the damages they sustained as the result of the fraud so perpetrated by Nance. The only evidence offered to sustain that claim for damages as against Beck was the testimony of the two

plaintiffs to the effect that during their negotiations with Nance, which resulted in consummating the trade with the Nance Motor Company, Beck was passing in and out of Nance's office where the negotiations took place, and that Beck was then secretary of the company. However, each of the plaintiffs further testified, in effect, that Beck did not stop to take part in the negotiations, and that he, the witness, did not know whether or not Beck heard any of the negotiations, while Beck denied specifically any knowledge of those negotiations or anything said by any of the persons participating therein. He further testified without contradiction that he was only nominally secretary of the company, that he was employed as a mechanic for the company, and that on the occasion plaintiffs said the negotiations with Nance took place he was busily engaged in his work as a mechanic, and if he passed through Nance's office while the negotiations were in progress his act in so doing was a necessary incident to his work, and that he heard nothing whatever of the discussion between the parties at that time.

Such being the state of the record, the court did not err in peremptorily instructing the jury to return a verdict in favor of Beck with respect to plaintiffs' claim for damages against him for alleged fraud, inducing plaintiffs to purchase the assets and business of the Nance Motor Company. To hold otherwise would be to say that a verdict may rest on mere suspicion, and may be sustained by building one presumption upon another; in other words, upon a mere scintilla of evidence. Joske v. Irvine, 91 Tex. 574, 44 S. W. 1059; First State Bank v. Jones, 107 Tex. 623, 183 S. W. 874; Galveston, H. & S. A. Ry. Co. v. Faber, 77 Tex. 153, 8 S. W. 64; Fort Worth Belt R. Co. v. Jones, 106 Tex. 345, 166 S. W. 1130; Gulf, C. & S. F. R. Co. v. Davis (Tex. Civ. App.) 161 S. W. 932 (writ of error refused); Garrett v. Hunt (Tex. Com. App.) 283 S. W. 489; Grand Fraternity v. Melton, 102 Tex. 399, 117 S. W. 788.

■ The evidence was sufficient to support the finding of the trial court that plaintiffs did not comply with the requirements of the Bulk Sales Law; that, therefore, the sale was void as to creditors of the motor company, and plaintiffs became accountable to them for the assets of the company that came into their hands by reason of such sale, notwithstanding the uncontroverted proof that plaintiffs acted in perfect good faith in the transaction and relied on assurances given by Nance that there were no outstanding liabilities of the company. An invoice of assets of the motor company on hand at the time of sale, which was attached to and made a part of plaintiffs' petition, included various and numerous equipment, tires, etc., for installation on automobiles, 419 gallons of oil, 576 gallons of gasoline, 2 cars, etc., in addition to furniture and fixtures. Texas Civil Statutes, arts. 4001 and 4002; C. J. Gerlach & Bro. v. Tex. Building Material Co. (Tex. Civ. App.) 245 S. W. 716; Interstate, etc., Co. v. Windham, 165 Mich. 648, 131 N. W. 102; Detroit National Bank v. Union Trust Co., 145 Mich. 656, 108 N. W. 1092, 116 Am. St. Rep. 319; Peck v. Hibben, 185 Ind. 623, 114 N. E. 216.

The decision of this court in Hobart Mfg. Co. v. Joyce & Mitchell, 4 S. W.(2d) 185, cited by appellants, is not in point, since the articles there held not to constitute "merchandise," within the purview of the Bulk Sales Law, were of a different kind and intended for a different purpose from the assets sold to plaintiffs by the defendants in this case. As shown by the opinion in that case by Associate Justice Buck, it was held that materials and ingredients used by a baker in the manufacture of his wares, which were not held for sale in that condition, although the products therefrom resulting from baking were sold, did not constitute "merchandise," within the meaning of that law, and the same conclusion was reached with reference to furniture and fixtures owned and used by the baker in the conduct of his business.

In the present suit plaintiffs attached to their petition in the trial court an itemized invoice of the assets included in their purchase from the motor company. That invoice shows an inventory of some 200 or more of parts that go to make up automobiles, such as pistons, nuts, bolts, piston rings, axles, pulleys, crank shafts, springs, drive shafts, door glasses, etc., of the aggregate value of $555.67, after allowing a discount of $299.21. Also, tires, tubes, horns, batteries, mirrors, fan belts, etc., of the aggregate value of $804.19. Also, oil and gasoline of the value of $266.54, and 1 coach car valued at $110.01, and a runabout car valued at $106.35, all of which are, over and above fixtures and shop equipment, valued at $1,500. And, in addition to the fact that the character and kind and amount of such assets indicate that they were intended for sale, plaintiffs admitted that they had actually disposed of $1,100 worth before they were called to account by creditors of the motor company, and for which sum they were held liable to the creditors as above noted. And no attempt was made by plaintiffs to show that they were used in repairing cars and not sold separately; such facts being peculiarly within their knowledge, if true.

The court held plaintiffs accountable for $1,100 as the value of assets sold by them, and gave them credit for the balance of the property received by them, but returned to the company after discovering its insolvency. It is insisted that the evidence showed conclusively that $1,747.98 of the cash paid for the purchase had been used by the motor company in payment of its debts owing by it at the time of the sale, and therefore it should have been allowed a credit for that amount,

and for that reason the court erred in holding them liable for the $1,100 noted. We have examined the evidence and find that it is insufficient to sustain the contention made. We believe it sustains the finding of the court to the contrary, and the assignment is therefore overruled.

We overrule the further contention that the finding of the court that the bank was an innocent purchaser of the two notes negotiated to it by the Nance Motor Company, and for which judgment was rendered against plaintiffs, was without sufficient evidence to support it.

That portion of the judgment from which the appeal was prosecuted is affirmed; in all other respects, it is left undisturbed.