## WILLIAMS SIGN CO. v. RODGERS et al.
(No. 3263.)

Court of Civil Appeals of Texas. Amarillo. Jan. 15, 1930.

Rehearing Denied Jan. 29, 1930.

S. E. Fish, of Amarillo, for appellant.
Cleo G. Clayton, of Amarillo, for appellees.

RANDOLPH, J. This suit was brought in the county court of Potter county, by J. A. Rodgers as plaintiff aginst the Williams Sign Company, Inc., George L. Williams, Williams Sign Company, a partnership composed of George L. Williams, Lee R. Williams, H. E. Hite, and G. A. Tull, as defendants, to recover the sum of $250 damages for the death of five head of cattle valued at $50 per head.

The plaintiff's petition alleges the death of said cattle to have been caused by being poisoned by them eating paint out of paint buckets thrown by the defendants or their employees into plaintiff's pasture. Nonsuit was taken by the plaintiff as to all the defendants except the Williams Sign Company, Inc. On trial before a jury, the following agreed "issue" was submitted by the court to the jury: "Do you find for the plaintiff or the defendant?" The jury returned their verdict finding for the plaintiff, and the court thereupon rendered judgment in favor of the plaintiff for the sum of $200 against the Williams Sign Company, Inc., from which judgment this appeal has been taken.

The appellant presents the following as uncontradicted issues of fact:

(1) Appellee's cattle died as the result of white lead poisoning;

(2) Williams Sign Company did not use white lead as an ingredient in its paints;

(3) Williams Sign Company's employees did not throw any of its paint buckets into the pasture of appellee nor leave them near the signboard in question;

(4) The paint buckets that were found in the pasture of plaintiff did not belong to the Williams Sign Company.

The evidence that the cattle died of white lead poisoning is obtained from the testimony and statements of Dr. Lanham, a veterinary. He did not see the cattle before or after their death. The plaintiff told him about the cattle being sick and that some of them had died and that they had something green on their noses and they staggered and kept walking about blind, and the doctor then told him that the cattle had been poisoned by white lead which is used in paint; that white lead is very poisonous to cattle, and if they can get enough of it it will kill them; that in his opinion, from the statements made by the plaintiff to him, the cattle died from white lead poisoning; that he did not see or examine the buckets or the paint.

The plaintiff testified: That he had a five-acre pasture just east of Amarillo and adjacent to the main highway. That the Wil-

liams Sign Company had a number of signboards which are painted from time to time. One of these signboards is just west of his pasture some 30 feet south of the road and some 15 or 20 feet west of the west line of his pasture. That he put some cattle in this pasture about the 1st of May, 1928, and a week later moved them to a Mr. Cramer's place some 6 miles east. He started moving them late in the afternoon, and before he got there noticed that 2 or 3 of them were staggering and acting queer, and 2 died that evening, and the next day 2 more died. They would act as though they had the blind staggers and kept walking around and staggering. He noticed that they had something green on their noses and tongues. When he got back from the Cramer pasture and went out into his pasture, he found several paint buckets, and one of the buckets had green paint on it and the others had had various colors. There were some 4 or 5 of these buckets and the bucket that had green paint on it—the condition of the paint in the bottom looked as though a cow had been licking it.

This evidence, circumstantial though it be, is sufficient to support the verdict of the jury upon the fact that the cattle died from eating the paint in the buckets.

The next question is as to the responsibility of the defendant company for the presence of the buckets in the pasture and of its ownership of the buckets.

■ It is practically conceded that there is no direct evidence that the defendant, through its employees, was responsible for the buckets being thrown into the plaintiff's pasture where they were accessible to the cattle, but the plaintiff claims that the circumstances and evidence reasonably support the contention that the defendant's employees threw them there. We cannot agree with this. The sign painting occurred, according to the defendant's witness E. E. Finklea, about the first of the year 1928. He was the merchant whose sign was being painted. A witness for plaintiff testified that according to his recollection, this sign was repainted in April, 1928. The cattle were poisoned along in the first part of May, 1928, according to the plaintiff. The plaintiff testified that he passed along this highway practically every day, along the part of the pasture in which the buckets were found, and that he had never seen any buckets about the signboard and had never seen any buckets in the pasture until after the poisoning of the cattle, when he went out and discovered the buckets in the pasture. That he found the buckets some 30 or 40 feet from the south line of the highway over in the pasture. He did not know who placed them there and does not know to whom the buckets belong. The defendant's employees testified that they used no white lead in their paint in making these signs; that owing to their need of buckets, they were

never thrown away, but when used were carried back to the shop, where they were burnt out and prepared for use again; that they did not throw any buckets into the plaintiff's pasture; that the paint buckets found in the plaintiff's pasture were examined by them, and that none of them contained any paint that they used when painting the Finklea Jewelry signs; that on an examination of the bucket that had green paint in it, it was found to be paint used in painting roofs of houses; that there are a number of houses along the East Tenth highway that have green roofs.

The plaintiff, appellee, cites the case of Cotton v. Cooper (Tex. Civ. App.) 160 S. W. 597, 601, which lays down the rule that: "Direct evidence is not required by law, and juries are allowed to indulge all reasonable inference from the facts revealed to them by the evidence, or which unbiased and rational minds can properly deduce from the facts adduced before them. * * * If this were not so, it would often be impossible to reach the rational conclusions that are inevitable deductions from proven facts.'"

We concur in this statement of the rule, but cannot agree that the facts of this case justify the jury's verdict. Circumstantial evidence can be just as conclusive as direct evidence, where the circumstances in evidence point to the responsibility of the defendant. The evidence in the case at bar does not exclude the probability of some other person having thrown the paint buckets into the plaintiff's pasture. On the contrary, the circumstances in evidence are not such as to satisfy an unbiased and rational mind that the defendant was guilty of throwing the buckets into the plaintiff's pasture. It is evident that the proof is not so satisfactory as to legally establish in the minds of the jury that the buckets were ever the property of the defendant.

■■ But the plaintiff claims that the jury were entitled to disregard the evidence of the defendant's witnesses, citing Houston E. & W. T. Ry. Co. v. Runnels, 92 Tex. 305, 47 S. W. 971, and other cases. This rule as laid down by the Supreme Court does not permit a jury to disregard the evidence of unimpeached witnesses. While they are the judges of the credibility of the witnesses, they cannot arbitrarily deny proper weight to undisputed facts which have no suspicion cast upon them. Grand Fraternity v. Mattie K. Melton, 102 Tex. 399, 117 S. W. 788; Daggett v. W. B. Worsham & Co. (Tex. Civ. App.) 264 S. W. 180, 185.

■ Should the jury disregard the evidence of the defendant, they are still faced with the rule that requires a plaintiff to establish his cause of action. This he has not done.

We therefore reverse the judgment of the trial court and remand this cause for a new trial.