**SUPREME CAMP OF AMERICAN WOOD-MEN v. McNULTY.**

**No. 3077.**

Court of Civil Appeals of Texas. Beaumont.

March 24, 1937.

Rehearing Denied April 7, 1937.

Shivers & Keith, of Port Arthur, for appellant.

O. I. Baker, of Port Arthur, for appellee.

WALKER, Chief Justice.

Appellant, the Supreme Camp of the American Woodmen, issued to Effie Curry, naming her mother, appellee, Louise McNulty, beneficiary, a certificate of insurance in the sum of $500; this certificate contained the following condition: "Nor shall the Supreme Camp or local camp be liable in any way whatsoever should the holder of this certificate come to his death by his own hand or act, whether sane or insane." Effie Curry died on the 28th day of April, 1935; this suit was filed in county court of Jefferson county, at law, by appellee against appellant to recover the principal amount of the certificate, attorney's fees, and damages. Appellant answered by demurrers, general denial, and by special plea of the condition of the policy copied above, and that Effie Curry's death was suicide. After overruling appellant's motion for an instructed verdict, the court submitted the case to the jury on special issues; on the verdict of the jury judgment was entered in favor of appellee for the relief prayed for.

We sustain appellant's first proposition that, under all the evidence, the insured's death was suicide, and that, under the undisputed evidence, it was entitled to an instructed verdict.

The deceased was an adult woman at the time of her death. A few months prior to her death her mother filed a complaint against her to have her adjudged insane. The following certificate by P. R. Stewart, M. D., dated 9–12–34, was received in evidence: "This certifies that I am well acquainted with Effie Curry, who is my next door neighbor for the last nine years. She was fairly well contained until about two months ago when she had a

very nervous spell and became worse. She is really a maniac of a severe type and very dangerous. She is fighting everybody, using bad language to every-body, regardless of creed or color." On an envelope addressed to the deceased, postmarked 4–20–35, was written the following message, identified by appellee as being in the handwriting of the deceased: "I planned this 3 months ago Just could not stand healp Mother." Appellee and her daughter, the deceased, had lived together at 717 Washington street, Port Arthur, about sixteen years. On the morning of the 28th day of April, 1935, appellee was in the garden of their home, and Effie was in the house alone. Appellee heard a· gunshot, rushed immediately into the house and found Effie on the floor in the bathroom, mortally wounded, with her pistol at her side. Effie died without making a statement. The evidence excluded the possibility that any one entered the house and shot Effie; under the evidence her death was either accidental or a suicide. Effie owned a pistol, but there was no positive affirmative evidence that the pistol found by her side was Effie's pistol. There was no explanation of why she had the pistol in the bathroom with her, other than on the theory of suicide. On the former trial appellee testified that she thought her daughter shot herself; on this trial she testified, "I don't know whether she shot herself or not." Claude Goldsmith, deputy sheriff, was called to the home of appellee immediately after Effie was found in the bathroom; he was shown the body as it lay in the bathroom. He described the position of the body on the floor, the location of the wound in her body, the pistol by her side, and, after giving all the details, was permitted by the court to testify that, in his judgment, Effie shot herself. Hon. E. S. McGuire, justice of the peace, testified that he "viewed" the body of Effie as it lay in the bathroom. He described the wound in the body and testified: "I think we have a bullet; I think I have the bullet shell, but I won't be sure."

## Opinion.

 The death of Effie Curry must be explained on the theory of accident or of intentional suicide. The presumption of law supports the theory of accident. Mutual Life Ins. Co. v. Tillman, 84 Tex. 31, 19 S.W. 294; United Fidelity Life Ins. Co. v. Adair (Tex.Com.App.) 29 S.W.(2d) 944, 949. We have carefully read the entire statement of facts in this case, and, in the language of our Supreme Court in Grand Fraternity v. Melton, 102 Tex. 399, 117 S. W. 788, 789, "We have sought for a fact or circumstance which would sustain a conclusion that the shooting was accidental; but our search has been in vain." `It must be said in this case as was said in Woodmen of the World v. Alexander (Tex.Civ. App.) 239 S.W. 343, 345, that all the testimony "points to suicide as the cause of the assured's death, and is not consistent with any other theory." Discussing the presumption of law against suicide, the court said in the case last cited: "Nor can the finding of the jury that the assured did not commit suicide be supported on the presumption the law indulges against suicide ([Sovereign Camp] Woodmen v. McCulloch (Tex.Civ.App.) 192 S.W. 1154), for 'presumptions are not indulged against testimony.' Moore v. Supreme Assembly, 42 Tex.Civ.App. 366, 372, 93 S.W. 1077, .1079; Sharpleigh v. Cooper, 1 White & W. Civ. Cas.Ct.App. § 55; Lincoln v. French, 105 U.S. 614, 26 L.Ed. 1189; Modern Woodmen of America v. Kincheloe (Ind.App.) 93 N.E. 452. In the case last cited the court said: 'There is a presumption of law against suicide; * * * but such presumption is not evidence and cannot be treated as evidence by the jury in reaching a verdict.' The effect of the presumption is, it seems, merely to place on the party asserting that death was due to suicide the burden of proving it. If he fails to prove it the presumption is to be given effect, but it has no probative force as against testimony sufficient to prove death by suicide. The testimony admitted at the trial showing, as it did, that the death of the assured was due to his own act, and there being no testimony in the record on which to base a conclusion to the contrary, the finding of the jury was unauthorized, and this court cannot do otherwise than reverse the judgment based on it. Grand Fraternity v. Melton, 102 Tex. 399, 117 S. W. 788; [State Mut. Life] Ins. Co. v. Long (Tex.Civ.App.) 178 S.W. 778."

In the case at bar, as in Bell v. Kansas City Life Ins. Co. (Mo.App.) 71 S.W.(2d) 135, 140, no one saw the insured shoot herself; discussing that fact, the court said in the Bell Case:

"The claim is made by respondent's counsel that there is a total absence of evidence tending to show that insured committed suicide. It is true· that no one saw the

insured shoot himself in the breast with the shotgun, but the fact is not controlling on the question of self-destruction.

"In Kornfeld v. Supreme Lodge O. of M. P., 72 Mo.App. 604, the suit was brought on a benefit certificate which provided that if the insured committed suicide within three years the insurance contract should be void. Within this three-year period the insured after an altercation with another party ran into a closed toilet room and shot himself, but nobody saw him, or could see him, shoot himself, but, on opening the door, his dead body, with the pistol at his side, were found therein. Upon a trial in the lower court the beneficiaries were permitted to recover, but on appeal this court, in an opinion by Judge Bland, reversed the judgment of the lower court outright, holding that the evidence that it was a suicide was so strong that the trial court erred in submitting plaintiff's case to the jury."

Judge Critz, speaking for the Commission of Appeals in United Fidelity Life Ins. Co. v. Adair, supra, discussed the presumption of law against suicide, and in that case affirmed the judgment of the lower court and of the Court of Civil Appeals, finding that the deceased did not commit suicide; however, in reaching that conclusion, after reviewing certain important cases, Judge Critz said: "An examination of all of these above-cited cases will show that the Buro Case [Home Ben. Ass'n v. Buro (Tex.Civ.App.) 10 S.W.(2d) 188] was not rendered, and in the others the deceased left some letters or made some statement which coupled with the other facts in the case proved suicide beyond any reasonable doubt."

In the case at bar the deceased left a note, to use the words of Judge Critz, which "coupled with the other facts in the case proved suicide beyond any reasonable doubt."

It follows that the judgment of the lower court should be reversed and judgment here rendered in favor of appellant, and it is accordingly so ordered.

Reversed and rendered.

### On Rehearing.

After receiving the testimony of Claude Goldsmith that, in his opinion, "Effie shot herself," the court afterwards excluded that statement; with this correction of the original opinion, appellee's motion for rehearing is overruled.