JONES et al. v. HUMBLE OIL & REFIN-
ING CO. et al.

No. 10232.

Court of Civil Appeals of Texas. San Antonio.

Feb. 16, 1938.

Rehearing Denied March 16, 1938.

Williams, Lee, Sears & Kennerly, T. E. Kennerly, and Jesse J. Lee, all of Houston, for appellants.

W. B. Moss, of Sinton, R. E. Seagler and Felix A. Raymer, both of Houston, and H. S. Bonham, of Corpus Christi, for appellees.

SLATTON, Justice.

Appellants, H. E. Nutter and eight of the eleven children of W. R. Peterson and Martha E. Peterson, deceased, instituted this action in trespass to try title against J. A. Heard et ux., H. D. Countiss, Archie O. Jones, W. M. Bevly et ux., Humble Oil & Refining Company, W. R. Peterson, and the Federal Land Bank of Houston for the recovery of an undivided 10/44 interest in and to 115.52 acres of land described as lots 1 and 8, in section 35, Taft Farm lots in San Patricio county, Tex.

A trial to the court resulted in a judgment that appellants take nothing by their suit, and granting affirmative relief in favor of the appellees; hence this appeal.

The trial court made and filed findings of fact and conclusions of law, all of which were in favor of the appellees and against appellants.

A brief summary of the title, without a full disclosure of the controversial issues, is as follows:

The Coleman-Fulton Pasture Company was the common source and conveyed the land to W. R. Peterson and his son, Cale Peterson, November 15, 1924. At that time and prior thereto, W. R. and Martha E. Peterson were married and had eleven children. W. R. and Martha E. Peterson executed a deed to their undivided interest in the land to Cale Peterson September 6, 1929, for a recited consideration of $6,000 cash, which deed was recorded on the 13th day of September, 1929. October 24, 1929, the land was conveyed to J. A. Heard by Cale Peterson for a recited consideration of $12,765; $2,000 cash, and eleven notes, one for $5,225, and ten for the sum of $554 each. Thereafter J. A. Heard and wife executed a deed of trust to the Federal Land Bank of Houston to secure a note of $5,500, being a renewal of note No. 1, executed by Heard to Cale Peterson, above described. Martha E. Peterson departed this life in the State of Oklahoma, February 21, 1931. Cale Peterson, on March 14, 1931, conveyed five of the ten notes of $554 each, that were given by Heard to Cale Peterson, to W. R. Peterson. October 26, 1931, J. A. Heard and wife conveyed the land to W. R. Peterson, in which conveyance the Federal Land Bank note and the ten notes of $554 each were assumed by W. R. Peterson, and on the same date Cale Peterson released the five $554 notes to J. A. Heard. W. R. Peterson released the five $554 notes July 26, 1932. W. R. Peterson conveyed the property to H. D. Countiss on October 31, 1931, in consideration of the said Countiss transferring to Peterson a 320-acre tract of land situated in the State of New Mexico. Countiss and wife conveyed the land to Archie O. Jones August 3, 1932, for a recited nominal consideration. A. O. Jones conveyed the property, on July 14, 1933, to W. M. Bevly, for a recited consideration of $400 cash and three notes of $400 each and subject to the Federal Land Bank note above described. An oil and gas lease covering the land was executed and delivered by W. M. Bevly et ux. to R. R. James, on March 5, 1934, which was transferred by the said James by assignment to the Humble Oil & Refining Company on the 8th day of March, 1934, for a consideration of approximately $1.75 per acre and $2.15 per acre, respectively.

The appellants, by their first proposition, claim that the deed from W. R. Peterson and his wife, Martha E. Peterson, to Cale Peterson was ineffectual to pass title, for the reason that there was no consideration paid, and that the deed was not delivered. This contention is predicated upon the testimony given at the trial by W. R. Peterson and Cale Peterson. W. R. Peterson testified that the $6,000 recited in the deed was not paid by Cale Peterson, and in fact no consideration whatever passed from the grantee to the grantors in said deed. He testified that at the time his wife, Martha E. Peterson, was seriously ill, and they had eleven children, some of whom were minors at the time, and it was her desire to be taken to the State of Oklahoma before her death; that the land involved was their community estate and it was their desire to place the title to said land in Cale Peterson to avoid the legal effect of their minor children being involved in the title; that Cale did not know anything about the deed having been made to him until he had negotiated a sale to J. A. Heard, at which time W. R. Peterson had all necessary title papers prepared and had them signed and executed by his son Cale Peterson; and that the $2,000 in cash, received from Heard,

was divided between W. R. Peterson and Cale Peterson, $1000 to each. Cale Peterson substantially corroborated the testimony given by W. R. Peterson.

The appellees contend that the conveyance of the land to Heard by Cale Peterson and an acceptance of the consideration therefor operated as a full and complete delivery and acceptance of the deed from W. R. and Martha E. Peterson to Cale Peterson. The trial court found that the deed was delivered by the grantors and that the same was accepted by the grantee, Cale Peterson. It may be stated that there was other evidence, in addition to that given by W. R. and Cale Peterson, which strongly corroborated their testimony that no consideration passed between the parties and that Cale Peterson did not know anything about the deed having been made and recorded until the conveyance from him to Heard. There is circumstantial evidence tending to show an acceptance of the deed by Cale Peterson. If in fact there was no consideration paid, the deed was from parents to child and the law would presume a consideration of love and affection. Here the presumption prevails that a sufficient consideration passed from the grantee to the grantors, and it would be presumed, in the absence of a dissent or a disclaimer, that there was a delivery of the deed. In the case of Dikes v. Miller, 24 Tex. 417, it is said: "When a conveyance is made to any person, his assent to it, it is said, is presumed: 1. Because there is a strong intendment of law, that it is for his benefit to take, and no one can be supposed to be unwilling to do that which is for his advantage: 2. Because it would be incongruous and absurd, that when a conveyance is completely executed on the part of the grantor, the estate should continue in him: 3. Because it is contrary to the policy of the law to permit the freehold to remain in suspense and uncertainty."

In volume 14, Texas Jurisprudence, par. 55, p. 817, it is said: "The recital on the subject is prima facie evidence of the amount of consideration and the payment of the same. When it is sought to show that the facts are otherwise, the burden of proof is on the party who controverts the prima facie case made by the recital."

In the case of Poulter v. Miller, Tex. Com.App., 221 S.W. 965, 966, it is said:

"The fact that Mrs. Miller denied the recitations of the deed and note, as to the consideration for which the note was given, did not necessarily destroy the probative force of the recitations, nor render these recitations valueless as evidence.

"It is the province of the jury to determine the credibility of the testimony introduced before them, and in reaching a conclusion they may consider the interest of the witnesses. They may, if they desire, believe the testimony of Mrs. Miller and base a finding thereon; but such testimony, although not contradicted except by the written instruments themselves, is not conclusive. As she was an interested witness, the jury would be warranted in rejecting her testimony, as it was uncorroborated and opposed to the written instruments purporting to be the agreement of the parties."

It is our opinion therefore that the trial court, sitting as the trier of the facts in this case, had the right to disregard the testimony of the Petersons and to believe the other evidence in the record tending to show a consideration and an acceptance of the delivery of the deed by the parties.

It is next contended by the appellants that Heard and his subsequent grantees cannot be innocent purchasers under the record chain of title under which each and all of them claim. These propositions are presented upon the theory that the written transfer of five of the $554 notes from Cale Peterson to W. R. Peterson was interpreted by appellants to be in effect a "quitclaim." These contentions are grounded upon the holding by our Supreme Court, in the case of Houston Oil Co. v. Niles, Tex.Com.App., 255 S.W. 604. In the instrument from Cale Peterson to W. R. Peterson, wherein vendor's lien notes were transferred and assigned, the appellants say the phrase "the grantor also bargains, sells and conveys all of the right title and interest owned or held by me in said land" gives to it the legal effect of a quitclaim. The appellants have not construed the instrument in its entirety. By use of the further phrase, immediately following the word "land," we quote, "by virtue of said notes herein conveyed and assigned," it is clearly shown that by the instrument the title to the notes was conveyed and any interest in and to the land in virtue of the notes being a lien against it. It is our opinion that the instrument cannot be interpreted to be a quitclaim deed within the purview of the ruling

made in the Houston Oil Company Case, supra.

■ We overrule appellants eighth, ninth, and tenth propositions. These propositions relate to the doctrine of protecting innocent purchasers pro tanto of the amount of the consideration actually paid. In the case of Durham v. Scrivener, Tex. Civ.App., 259 S.W. 606, 616, it is said: "Where a party is an innocent purchaser to the extent of having paid a part of the purchase money without notice, a court of equity may adjust the equities between such purchaser and the true owner, either by allowing such owner to pay back the purchase money so paid and recover the land, or permit the purchaser to retain title to all of the land by paying the balance due to the owner, or may adjudge them to be tenants in common pro tanto. There is no hard and fast rule as to this, but each case will depend upon its particular facts."

The trial court had all the facts of this case before him and refused the application of the principles contended for by the appellants. In Corpus Juris, vol. 66, par. 934, p. 1108, it is said: "The giving of a mortgage or other security for the payment of the purchase price, or even the giving of negotiable notes will not be sufficient to entitle one to the rights of a bona fide purchaser; unless the parties are so circumstanced that a court of equity cannot prevent the enforcement of such security or notes, as where the notes have been negotiated and transferred into the hands of an innocent purchaser for value."

Here the note held by the Federal Land Bank of Houston for the sum of more than $5,000 was admittedly held by the bank as an innocent purchaser, for the reason that appellants dismissed the bank from this suit.

In the case of Moore v. Humble Oil & Ref. Co., Tex.Civ.App., 85 S.W.2d 943, at page 945, it is said: "It further appears that the holder of the indebtedness was not the vendor but an innocent third party, and that Mrs. Adams was obliged to either make the payments specified or lose the property."

Appellants contend by their eleventh proposition that R. R. James, the purchaser of the mineral estate from Bevly and wife, was acting as an agent of the Humble Oil & Refining Company, instead of an independent broker, as found by the trial court. We have viewed the evidence in the light of this attack and are of the opinion that the evidence supports the finding made by the trial court, that R. R. James was acting as an independent broker in his purchase of the oil and gas lease involved.

■ Finally, it is contended by the appellants that the testimony of Cale Peterson and W. R. Peterson (as to the consideration and delivery of the deed from W. R. and Martha E. Peterson to Cale Peterson) being uncontroverted and corroborated by the testimony of other witnesses and documentary evidence, the trial court could not arbitrarily reject such evidence and make contrary findings thereon. The substance of the evidence given by the witnesses W. R. and Cale Peterson has been stated. The appellants rely principally upon the case of Grand Fraternity v. Melton, 102 Tex. 399, 117 S.W. 788, and Trinity Gravel Co. v. Cranke, Tex.Com.App., 282 S.W. 798. We are of the opinion that the facts of these cases are not applicable here. In the case of Reeves v. Simpson, Tex.Civ.App., 144 S.W. 361, 362, it is said: "By the terms of the deed the legal title to the property was vested in the grantees named therein; and, even though it should be held that one-half of the consideration therefor was paid by the mother, yet, in the absence of any proof to the contrary, the presumption must be indulged that she intended the conveyance to her children as a gift to them of any interest she otherwise might have in the property."

The exact principle contended for by the appellants was ruled adversely to them in the case of Kennedy v. Kennedy, Tex. Civ.App., 210 S.W. 581, in which a writ was refused by the Supreme Court. On the authority of that case we are of the opinion that the trial court had the right to disregard all the testimony, or any part thereof, given by the Petersons and make findings of fact contrary thereto. He had the right to consider the interest of Cale Peterson and that his testimony would enhance his own estate. W. R. Peterson, while his testimony did not inure to his own benefit, a greater number of his children would be benefited by it. Moreover, Martha E. Peterson, one of the grantors in the deed to Cale Peterson, was dead and her lips were sealed. In the negotiations of the sale to Heard W. R. Peterson represented to Heard that the land be-

longed to Cale Peterson. The trial court had the opportunity to view the witnesses testifying in person, and to observe their demeanor upon the witness stand. The important task of determining the credibility of witnesses and the weight to be given to their testimony was his important duty. With the record as presented we are without authority, and would be slow to do so if invested with the authority, to overturn his decision.

Accordingly, the judgment entered by the trial court will be in all things affirmed.