ANGELINA COUNTY LUMBER
COMPANY, Appellant,

v.

Julius REINHARDT, et ux., Appellees.

No. 5078.

Court of Civil Appeals of Texas.

Beaumont.

Dec. 15, 1955.

Rehearing Denied Jan. 11, 1956.

Collins, Garrison, Renfrow & Zeleskey, Lufkin, for appellant.

Ross Hightower, V. A. Collins, Livingston, for appellee.

ANDERSON, Justice.

Julius Reinhardt and wife, as plaintiffs, sued Angelina County Lumber Company to recover 29.29 acres of land in Polk County, and specially pleaded the ten-year statute of limitation as to the basis of their claim to title. The defendant answered by plea of not guilty and cross-acted in form of trespass to try title. Trial was to a jury. The trial court overruled the defendant's motion for judgment on the jury's verdict, partially disregarded the verdict and rendered judgment in favor of the plaintiffs. The defendant, without having filed a motion for a new trial, has duly perfected its appeal from the judgment so rendered.

At the outset of the trial the parties stipulated: (1) That the defendant holds record title to the land. (2) That plaintiffs were in actual possession of the land, using it continuously, from November 11, 1918, to January 1, 1946. (3) That, because of a tenancy agreement that had been entered into by the owner of the land and one of plaintiffs' predecessors in possession, plaintiffs took possession of the land as constructive tenants of the owner. There was in dispute, therefore, only the matters of whether the plaintiffs ever repudiated their status as tenants and claimed the land adversely, and, if so, whether notice of such repudiation and adverse claim was visited on the owner of the land more than ten years before January 1, 1946.

The stipulation that plaintiffs entered into possession of the land as constructive tenants of the owner was made in deference to the holding of this court on a former appeal of the case, Tex.Civ.App., 270 S.W.2d 259 and is contrary to the position taken by plaintiffs during the previous trial. This court held that evidence which defendant tendered, but which was excluded on plaintiffs' objections, would have established as a matter of law that plaintiffs did in fact enter into possession of the land as tenants, and that the exclusion of the evidence was error. In stipulating as they did, therefore, plaintiffs merely accepted the law as it had been declared by this court. They did not concede that they consciously took possession of the land as tenants, but maintained the contrary. They also maintained that they claimed the land as their own from the commencement of their possession of it.

On June 29, 1918, plaintiffs purchased land that adjoined the land in controversy and with which the land in controversy was under a common fence; and in taking possession November 11, 1918, of the land they had purchased, they also took possession of the land here involved. Plaintiff Julius Reinhardt testified that he thought at the time that it was a part of the land he had purchased and that he did not learn the contrary until a survey was made in October of 1936. He also testified that during all the time he was in possession of it he claimed the land as his own.

Except for the fact that they took possession as tenants, the evidence, taken together with the stipulation, would unquestionably support a finding that plaintiffs acquired title to the land by limitation. However, since they did take possession as tenants of the owner, it was necessary, before limitation could begin to run in their favor, that they repudiate the tenancy relationship and give the owner notice thereof and of their adverse claim. Thompson v. Richardson, Tex.Com.App., 221 S.W. 952, 953; Mhoon v. Cain, 77 Tex. 316, 318, 14 S.W. 24; Buford v. Wasson, 49 Tex.Civ.App. 454, 109 S.W. 275, error refused; 2 Tex.Jur. 144, Adverse Possession, Sec. 75; 27 Tex.Jur. 75, Landlord and Tenant, Sec. 22. Proof that they did this and thereafter held adverse possession of the land for ten consecutive years was essential to their right to recover, and the burden of this proof rested on them.

The plaintiffs recognized this, and to show repudiation of the tenancy relationship and notice thereof to the owner they

undertook to prove that in October of 1932 they cut and removed from the land a considerable quantity of timber and that just after they had done so Barron Thompson, while in the course of his employment as an agent of the owner of the land, discovered that the timber had been cut and removed, and was informed by plaintiff Julius Reinhardt that he (Reinhardt) claimed it. They make no claim to having otherwise given the owner of the land notice that they were repudiating, or had repudiated, the tenancy relationship and were claiming the land adversely. They do not contend that aside from cutting and removing timber from it they made any use of the land that was inconsistent with the tenancy relationship. Neither do they contend that notice of their act of cutting and removing the timber should be imputed to the owner irrespective of whether either the owner or its agent had actual notice thereof. Instead, they rely upon actual notice to Thompson and upon the legal principle that notice to an agent in the course and scope of his employment is notice to the agent's principal.

To establish when the timber was cut and removed and that at about the same time Barron Thompson knew it had been cut and removed by plaintiffs and was apprised of their claim of right to it, plaintiffs relied upon the testimony of plaintiff Julius Reinhardt and of Barron Thompson himself, whom they called as a witness.

Reinhardt testified that during October of 1932 he cut and removed from the land an estimated forty thousand feet of timber, and that right afterwards Barron Thompson, who it is claimed was then an agent of the owner of the land, questioned him about it. His version of the conversation he claimed to have had with Thompson was as follows: "Q. What was the substance of the conversation you had with him [Thompson]?

A. He said, 'Didn't you cut some of Lynch Davidson's timber,' and I said, 'I claim it.'"

Thompson gave almost identically the same account of the alleged conversation: "Q. Did you ask him [Reinhardt] any questions about it [the timber cutting]? A. Well, the timber was logged out there to Binford, and I asked Mr. Reinhardt, 'Aren't you putting out some of Lynch Davidson's timber? Q. What was his reply? A. He said, 'I claim it.'" He furthermore corroborated Reinhardt's testimony that the timber was cut in October of 1932, and testified that he himself saw at the time where it had been cut. He also testified that while in his company Lynch Davidson, president of the defendant company, saw some of the logs alongside the railroad awaiting loading, asked by whom they were being put out, and was told—by Thompson—that they were being put out by Julius Reinhardt. However, he did not claim to have told Davidson that the logs had been cut on defendant's land, and testified that he never reported to the company or to any of its officials that Reinhardt had cut and removed timber from the land in question.

The defendant concedes that plaintiffs cut and removed timber from the land, but not that this occurred as early as October of 1932. Evidence, in form of the opinion of one who qualified as an expert witness, was introduced to prove that the timber was cut not more than a year or a year and a half prior to October of 1936. It follows, of course, that defendant does not concede that in October of 1932 Barron Thompson learned that the timber had been cut and removed by plaintiffs, and conversed with Julius Reinhardt and Lynch Davidson regarding it. It does concede, however, that in October of 1936 it or its predecessor in title was apprised of the fact that plaintiffs had cut and removed the timber. The land was surveyed at that time, along with other land that defendant or its predecessor in title owned in the same vicinity. The survey was made under the direction of Sid Sherman, who, during March of that year, had succeeded to the position theretofore held by Barron Thompson; and on October 14th Sherman advised his principal by letter that plaintiffs had cut and removed the timber and had sold it to Edens-Birch Lumber Company. On the following day the principal acknowledged receipt of Sher-

man's letter and directed Sherman to ascertain the quantity of timber that had been taken. An estimate of the quantity was then made, and on March 2, 1937, demand was made on Edens-Birch Lumber Company that it pay for 64,362 feet of timber. No representation was made, however, that all of the timber for which payment was demanded had been taken from the land in controversy, but only that it had been cut by Julius Reinhardt from the A. Johnson survey, of which the land in controversy is a part.

Both the conversation Thompson and Reinhardt testified they had and the one Thompson claimed to have had with Lynch Davidson were represented as having been unattended by any third person, and Davidson had been dead a number of years when the case was tried. There was available to the defendant, therefore, no witness who could contradict the testimony of Thompson and Reinhardt regarding the alleged conversations. Furthermore, if the timber was in fact cut in October of 1932, there was, in the very nature of things, no means by which the defendant could disprove Thompson's claim to having seen evidence of the fact at the time. Evidence was adduced, however, which tended to discredit the testimony of both Thompson and Reinhardt, if not actually to controvert it. For example, not only was there the evidence, already mentioned, which tended to prove that the timber was cut considerably later than October of 1932, but proof was made that when his deposition was taken before the first trial of the case Reinhardt made no mention of having had a conversation with Thompson regarding either the land or the timber, and that during the first trial not only had neither Thompson nor Reinhardt testified to either of the alleged conversations, nor had Thompson made claim to having known in 1932 that the timber had been cut, but Reinhardt had testified that until he talked to Sid Sherman in October of 1936 he had not discussed the land with any representative of its owner, and Thompson had testified that he was not familiar with the land in controversy, but only with Reinhardt's pasture generally.

It was shown, in addition, that Reinhardt and Thompson had been good personal friends for many years and that Reinhardt had acted as campaign manager for Thompson in 1932 when the latter successfully campaigned for the office of county commissioner; and there was evidence to show that only a few days before the last trial of the case Thompson had refused to divulge to representatives of the defendant whether or not he (Thompson) had ever had a conversation with Reinhardt regarding the land. There was also evidence which tended to impeach and refute Reinhardt's testimony that he had at all times since taking possession of it claimed the land in controversy as his own and had not learned until in October of 1936 that it was not a part of what he had purchased. Sid Sherman testified, for instance, that in October of 1936, before the survey of the land had been completed, he asked Julius Reinhardt about the location of defendant's land or its lines and that Reinhardt pointed out the land here involved; and it was shown that on May 1, 1946, by written tenancy agreement, both of the plaintiffs acknowledged themselves to be holding the land as tenants at will of the owner of the record title. There was furthermore a direct conflict between the testimony of Reinhardt and Sherman regarding whether in October of 1936 Sherman presented to Reinhardt a tenancy agreement and asked him to sign it. Reinhardt testified that Sherman did, and Sherman testified the contrary.

While Sherman testified that after he succeeded to Thompson's position in 1936 Thompson told him that plaintiffs had cut some of defendant's timber and that the cutting had not been reported by Thompson to his principal, his testimony does not suggest that Thompson indicated when he had gained his information or what land he had in mind as the site of the cutting. Furthermore, Thompson advised him, Sherman said, to have the land surveyed and its lines definitely located before charging anyone with having wrongfully taken timber, which bit of advice suggests that Thompson was merely of the opinion that

plaintiffs had taken timber from defendant's land, rather than that he had definite information to that effect.

Thompson, as already stated, was called by plaintiffs to testify, and at the time he testified, in 1954, he was not employed by the defendant and had not been since early in 1937. His testimony was therefore not binding on the defendant in any special legal sense.

The defendant was not permitted to introduce in evidence the opinion rendered by this court on the former appeal, in which particular attention was called to the fact that on another trial the issues regarding whether plaintiffs had repudiated the tenancy relationship and given notice thereof would be involved. It was permitted to show, however, that a previous judgment in favor of plaintiffs had been appealed from and reversed, and the questions asked regarding the matter were of such nature and were asked in such circumstances as to suggest that the opinion of the appellate court rendered the testimony regarding repudiation and notice essential to plaintiffs' cause of action.

The case was submitted to the jury on six special issues, in response to which the jury found: (1) That plaintiffs repudiated their status as tenants. (2) That they did so in October of 1932. (3) That such repudiation was made known to the owner of the land. (4) That this occurred in October of 1936. (5) That plaintiffs "had exclusive, peaceable and adverse possession of the land" for ten consecutive years between November 11, 1918, and January 1, 1946. (6) That "such adverse possession" commenced in October, 1932, and continued to January, 1946.

Upon the theory that under the law and the evidence special issues three and four were immaterial issues which should not have been submitted to the jury, the trial court, in rendering judgment, disregarded the findings made by the jury in response to those issues. It concluded, as reflected by the judgment: (1) That the undisputed evidence established, as a matter of law,

that in October of 1932 the plaintiffs "cut and removed the timber from said land"; that this fact was known at the time to Barron Thompson; and that Barron Thompson was then "the agent of Lynch Davidson Lumber Company and George W. Seamon, the receiver thereof, to look after the land and timber of said lumber company and prevent trespassing thereon." (2) That by cutting and removing the timber from the land the plaintiffs, as a matter of law, repudiated the tenancy agreement under which they entered into possession, and that their possession thereupon became adverse. (3) That, as a matter of law, Barron Thompson's knowledge that the timber had been cut and removed by plaintiffs was imputed to Thompson's principals, Lynch Davidson Lumber Company and George M. Seamon, the receiver of the company. The judgment further recites that it "is rendered upon the findings of the jury that adverse possession began in October, 1932, and ended January 1, 1946."

The appellant has brought forward seven points of alleged error, but we find it necessary to pass upon only points two and six, the former of which assigns as error the action of the trial court in overruling defendant's motion for judgment on the jury's verdict, and the latter of which complains of the court's action in disregarding the findings made by the jury in response to special issues three and four and in rendering judgment for plaintiffs. The specific contention is made under point six that the evidence did not conclusively establish that Barron Thompson knew before March of 1936 that plaintiffs had cut and removed timber from the land. The points will be dealt with in their inverse order.

■ We agree with appellant's contention that the evidence did not conclusively establish that Barron Thompson knew prior to sometime in 1936 that plaintiffs had cut and removed timber from the land in controversy. We incline to the view that Thompson's claim to having seen in October of 1932 that the timber had been cut and removed should be considered as having been actually controverted; this,

not only upon the theory that there was evidence tending to show that the timber was not cut and removed until later, but also upon the theory that his claim to having seen evidence of the cutting in 1932 and his claim to having discussed the matter at the time with Reinhardt were so related as to suggest that if the one was untrue the other probably was also, together with the theory that Julius Reinhardt's testimony, during the first trial of the case, that until he talked with Sid Sherman in October of 1936 he had not discussed the land with any representative of its owner should be treated as an admission and as directly controverting his and Thompson's testimony regarding the alleged conversation between them in October of 1932. See Texas Law of Evidence, McCormick and Ray, Sec. 445, p. 572; Munk v. Stanfield, Tex.Civ.App., 100 S.W. 213; Kennedy v. Upshaw, 66 Tex. 442, 445, 453, 1 S.W. 308; Park v. Sullivan, Tex.Civ.App., 12 S.W.2d 265. Irrespective of the correctness of this view, however, and of whether the testimony of Thompson and Reinhardt is considered as having been directly controverted, we think the jury was at liberty to disbelieve the testimony of both witnesses, and there was no other evidence tending to show that Thompson gained knowledge of the cutting prior to sometime during the year 1936, if then. The facts and circumstances to which we have already called attention cast grave suspicion on the testimony of both Thompson and Reinhardt; and in Casualty Reciprocal Exchange v. Parker, Tex.Com.App., 12 S.W.2d 536, 537, it was said: "The jury are not compelled to believe uncontradicted testimony that is suspicious or that comes from an interested or biased source." See, also, Mills v. Mills, Tex.Com.App., 228 S.W. 919, opinion adopted; Cheatham v. Riddle, 12 Tex. 112; Houston, E. & W. T. Ry. Co. v. Runnels, 92 Tex. 305, 47 S.W. 971; Pope v. Beauchamp, 110 Tex. 271, 219 S.W. 447, 450; Twichell v. Klinke, Tex.Civ.App., 272 S.W. 283, 287. In arriving at the foregoing conclusion we have not been unmindful of such cases as Nobles v. Texas Indemnity Ins. Co., Tex.Com.App., 24 S.W.2d 367; Grand Fraternity v. Melton, 102 Tex. 399, 117 S.W. 788; and Texas & N. O. R. Co. v. Burden, 146 Tex. 109, 203 S.W.2d 522, 530. We merely think the rule that was applied in those cases is inapplicable to the fact situation which is before us.

Not only are we of the opinion that the jury was at liberty to disbelieve and reject the testimony of Reinhardt and Thompson regarding the latter's knowledge in 1932 that the timber had been cut, but we think they must be held to have done so. They found, in response to issues one and two, that in October of 1932 the plaintiffs repudiated their status as tenants; and these findings must have been based upon the conclusion that the timber was in fact cut and removed at that time, because the evidence suggests nothing else on which they could have been based. The jury then found, in response to special issue four, that it was in October of 1936 rather than in October of 1932 that the repudiation was made known to the owner of the land. This finding must be construed, we think, as a finding that it was not until in October of 1936 that even an agent of the owner had notice that the timber had been cut, because no other special issue dealt specifically with the element of time of notice to the owner, and the jury was instructed as follows: "You are further instructed that notice of repudiation as used in this charge may be given or made known to an agent acting in the course and scope of his employment, and that such notice given or made known to such agent is imputed to be a notice of repudiation to his principal." Had they credited the testimony of Reinhardt and Thompson the jury undoubtedly would have found that it was in October of 1932 that the repudiation was made known to the owner; and since they did not so find, we have no alternative to concluding that they disbelieved and rejected the testimony. The jury evidently concluded that the fact that timber had been cut and removed from the particular land in controversy was not known to an agent of the owner until Sid Sherman was apprised of it when the land was surveyed in October of 1936.

The finding made by the jury in response to special issue four was highly material, because, as we have already pointed out, limitation did not begin to run against the defendant until defendant had notice of repudiation of the tenancy relationship and that plaintiffs were claiming the land adversely; and if limitation did not begin to run until in October of 1936, plaintiffs failed to establish title in themselves. We conclude, therefore, that the trial court erred in disregarding the finding made by the jury in response to the issue and in rendering judgment for the plaintiffs.

Appellees take the position that if the testimony of Barron Thompson is not to be given full faith and credit, defendant should have requested that a special issue be submitted to the jury inquiring as to whether Thompson knew in October of 1932 that the timber had been cut, and since they failed to do so they waived the issue and their right to complain of the trial court's action in treating Thompson's testimony as true. The contention is without merit. As already stated, the burden of proving repudiation of the tenancy relationship and notice thereof to the owner rested on the plaintiffs themselves. And since the evidence by which they undertook to establish their contention regarding time of notice was insufficient to establish it as a matter of law, and the issue had to be and was submitted to the jury, the defendant clearly is not precluded from attacking the trial court's action in disregarding the jury's finding. The defendant was under no duty to request the submission of an issue of the nature suggested by appellees.

There remains the question of whether there is such conflict in the jury's findings as to preclude rendition of judgment in favor of appellant. There is no conflict at all unless between the combination of findings made in response to special issues one, two, five, and six and the finding made in response to special issue four; and there is none between these unless upon the concept that there can be no repudiation of a tenancy relationship, and the possession of a tenant cannot become adverse, until notice of repudiation and of an adverse claim is visited on the owner of the land.

The jury found, in response to the four issues first mentioned, that in October of 1932 the plaintiffs repudiated their status as tenants and commenced to claim the land adversely and that they thereafter "had exclusive, peaceable and adverse possession of the land" for ten consecutive years preceding January of 1946. It also found, in response to special issue four, that it was in October of 1936 that the repudiation was made known to the owner of the land; and we have held that this finding must be construed as a finding that the owner did not have notice earlier.

The issues must be construed together and in the light of the record as a whole; and when they are so construed, we think the supposed conflict is more apparent than real. The jury was not instructed as to the meaning of repudiation, and was not told that there could be no repudiation or adverse claim without notice. Furthermore, whether rightly so or not, the charge of the court, to which no objection was urged, treated repudiation and notice of repudiation as two distinct elements, and we think the jury was authorized to so consider them. From the jury's viewpoint, therefore, there could have been no inconsistency between their conclusion that the cutting and removal of the timber amounted in law to an act of repudiation and their finding that knowledge of such act was not visited on the owner of the land until four years later. We are further of the opinion that from the jury's viewpoint there was no inconsistency between their finding that plaintiffs' possession became adverse in October of 1932 and their finding that notice of repudiation of the tenancy relationship was not given until four years later. They evidently attached significance to the timber cutting, but they had not been instructed that notice of repudiation was a prerequisite to plaintiffs' possession becoming adverse; and their finding of adverse possession was otherwise consistent with the evidence and the court's charge. We are of the opinion, therefore, that when the find-

ings are appraised in the light of the manner in which the case was submitted to the jury and in the light of the record as a whole they are not in irreconcilable conflict.

Upon the basis of what has been said, appellants' points two and six are sustained, the judgment of the trial court is reversed, and judgment is here rendered that plaintiffs take nothing and that the defendant or appellant recover on its cross-action title to and possession of the land involved, together with its costs.