**WITCHER et al. v. BURT et al.**

No. 13989.

Court of Civil Appeals of Texas. Fort Worth.

Dec. 1, 1939.

Rehearing Denied Jan. 26, 1940.

752

Kearby Peery, of Wichita Falls, for plaintiffs in error.

Carrigan, Hoffman & Carrigan and James E. Prothro, all of Wichita Falls, for defendants in error.

BROWN, Justice.

W. C. Witcher and wife brought suit against Marilyn Miller Burt and husband for personal injuries sustained by Mrs. Witcher in the collision between her automobile and one driven by Mrs. Burt, and for damages resulting to the Witcher car by reason of the accident. The cause was tried to a jury and many issues submitted for determination.

The jury found negligence on the part of Mrs. Burt, proximately causing the collision, and found all issues on contributory negligence in favor of Mrs. Witcher.

The jury found the damage to the automobile was $225, but returned the following answers to the issues shown:

"Issue 17: Do you find from a preponderance of the evidence that Mrs. Witcher suffered any personal injury as a direct and proximate result of the collision in question? Answer: No.

"Issue 18: What amount of money, if any, now paid in cash, do you find from a preponderance of the evidence would reasonably compensate the plaintiff for the injuries, if any, sustained by Mrs. W. C. Witcher, as a direct and proximate result of the accident? Answer: None."

"Issue 64: Do you find from a preponderance of the evidence that Annie L. Witcher suffers any disability in the use of her right knee? Answer: No.

"Issue 65: Do you find from a preponderance of the evidence that such disability, if any, to the right knee is solely the result of arthritis? Answer: Yes."

Among the defenses pleaded was that Mrs. Witcher had suffered from arthritis in her knee for some time prior to the accident, and that the condition of her knee was solely due to arthritis.

On this verdict the trial court rendered judgment solely for the damages to the car, and the plaintiffs below have appealed to this court when their motion for a new trial was overruled.

If we must disregard all of the testimony given by Mrs. Witcher, touching on the bruises she sustained in the collision and the pain and suffering she endured and the difficulty which she says she finds in using the leg that she claims was injured in the collision, because none of such testimony is corroborated and she is the vitally interested witness, nevertheless, we find she is in some measure corroborated in at least one particular, in this: she testifies that she was knocked unconscious and a wholly disinterested witness, who reached her immediately after the accident, said that she had "fainted" and he called to a man who was near by, for whom the witness worked, "to come out there, that Mrs. Witcher had fainted in her car."

It was no more than natural for such a lay witness, as was this man, Raz Wilson, who appears to be a colored man, to speak of Mrs. Witcher's unconscious condition as being in a faint.

In fact, if the jury were warranted from the evidence, in finding that Mrs. Witcher merely fainted, it could not be reasonably said that such a condition was not brought about by the shock of the collision, and it cannot be reasonably concluded that such a shock, producing such effect, is not some personal injury.

But going further into the evidence, we find that the defendants introduced as a witness a physician of their selection, who examined Mrs. Witcher, at their request, and he testified to facts which show that Mrs. Witcher sustained some injury in the accident.

We cannot agree with appellees in their contention that this witness' testimony was brought out by and was given in answer to a mere hypothetical question, which the jury may have discarded, in

that they did not accept the facts of the hypothesis as true. We do not find the doctor denying the facts stated in the hypothetical question, nor do we find that he gave his testimony as being bottomed solely on the hypothesis.

Let us give the record to illustrate what we find.

After testifying that Mrs. Witcher was suffering from arthritis, which appeared to be a case of long standing—one, we will say, that obtained before the accident—the doctor said that a traumatic injury to the knee, in which arthritis was present, would tend to aggravate the disease and make it worse. Then he was asked: "Now, if Mrs. Witcher had been able to walk up and down stairs without any difficulty, and had been able to do her housework prior to the time of this injury, and after the injury, say for a period of from December 20th to today, nearly a year, if her knee continued to bother her, would you say that was a permanent condition that might be attributed to the accident, or at least in part to the accident; in other words, if she was in condition to walk up stairs without any complaint before the 'accident and without any noticeable pain in her knee, and after the accident for one year her knee continued to trouble her, and as you said she was afraid of it, and it pained her some, would you say it was due in part to the accidental injury?" And the doctor answered: "I think the accident aggravated the condition, yes, sir."

To further show that the doctor meant to testify that in his opinion the accident aggravated the condition of the knee, this question and answer appear: "I am not going to ask you to say whether it (the arthritis) was caused by the injury; I believe you testified the accident accelerated the previous arthritis? Answer: Yes, sir."

The doctor had testified that Mrs. Witcher had a 25% disability to her knee and that such condition is permanent.

The following also appears from the cross-examination of the doctor: "Now, doctor, in your report of June 11th, you say that your conclusion is that the principal trouble is arthritis, and that has been somewhat accelerated by the accident, and you didn't think that would make an improvement over the present condition, in other words, you felt like the condi-

tion on June 11th would be permanent? Answer: Yes, sir, I think so."

The only evidence introduced by the defendants, seeking to contradict the testimony given by Mrs. Witcher covering the bruises and injuries she received in the collision, comes from the lips of Dr. Everett Jones, a witness for the defendants, whose personal examination of Mrs. Witcher was made several months after the accident. Admitting for argument's sake that the doctor's testimony is sufficient to raise an issue as to any injury to Mrs. Witcher's knee, and that the jury was warranted in wholly disregarding Mrs. Witcher's testimony concerning such issue, there is absolutely no evidence in the record raising any issue as to the bruises received by Mrs. Witcher and the fact of her fainting, or being knocked unconscious, and as to her physical pain and suffering, and we do not find where there are in evidence any suspicious circumstances which might shed light on Mrs. Witcher's testimony and furnish the jury an opportunity to wholly disbelieve and disregard it.

The fact that she went to the clinic or hospital (where Dr. Jones treats his patients) for an X-ray examination, a few days after the accident, is some corroboration of her testimony, and no person who examined her, or who was present at such examination, testified denying her statements as to bruises of which she complains.

We must assume that these witnesses were available to the defendants, in the absence of any proof excusing their absence.

Dr. Jones, who testifies that she came to the hospital, did not see her at that time and made no examination of her.

We do not believe that the jury was warranted in wholly disregarding the testimony and in saying that Mrs. Witcher received no personal injury in the accident.

Such cases as Clark v. Spurdis, Tex. Civ.App., 258 S.W. 881, writ dismissed; May v. Hahn, 22 Tex.Civ.App. 365, 54 S.W. 416; and Id., Tex.Civ.App., 64 S. W. 942; and Grand Fraternity v. Melton, 102 Tex. 399, 117 S.W. 788, support our views.

For the reasons stated, the judgment of the trial court is reversed and the cause is remanded.