### GRUY v. REITER FOSTER OIL CORPORATION et al.

### No. 11025.

Court of Civil Appeals of Texas. Galveston.

April 17, 1941.

Rehearings Denied May 15, 1941.

Bryan, Suhr, Bering & Bell, E. H. Suhr, Chas. W. Bell, and Joe R. Greenhill, all of Houston, for appellant.

John B. Warren, of Houston, for Reiter-Foster Oil Corporation.

D. H. Gregg and Robt. F. Higgins, both of Houston (E. E. Townes and R. E. Seagler, both of Houston, of counsel), for Humble Oil & Refining Co.

CODY, Justice.

This suit was filed by plaintiff on September 4, 1937, against defendants, to have the rights of the heirs of Lucile Gruy, who died testate on February 18, 1933, under the mineral lease involved in this suit, adjudicated; plaintiff alleging:

(a) That, by its terms, the mineral lease is divisible as to each survey or fractional survey which it covers.

(b) That said lease had terminated on 13 designated surveys and fractional surveys which is covered, from which no oil or gas had been produced for some two years before this suit was filed, and on none of which wells had been drilled since December 31, 1930. That these 13 surveys and fractional surveys aggregated 7,860 acres of land.

In the alternative, the suit was brought:

(a) To recover damages from defendants for their failure to develop the production of oil with reasonable diligence from aforesaid 13 surveys and fractional surveys, totalling 7,860 acres.

(b) To recover damages from defendants for their failure to reasonably develop oil production from other surveys covered by said lease, and which are not included in the aforesaid 13 surveys and fractional suveys, which five surveys aggregated 3,200 acres of land, from which production was being had from ten wells, but which only totalled 126 barrels of oil per day.

(c) For specific performance of their obligation by defendants to reasonably develop for production of oil each survey which is found by the court to be subject to said lease, by requiring the drilling of a well to every ten acres of land.

The petition is quite lengthy. It alleges that Viggo Kohler, as lessor, and the appellees, as lessees, on July 24, 1926, entered into a mineral lease of land belonging to the lessor in Duval County, the terms of which lease, and the description of the land covered thereby, and the development had thereunder being fully plead. The petition further alleged that Viggo Kohler by general warranty deed, on May 3, 1930, conveyed to his daughter, Lucile Gruy, a married woman, all his interest in the land covered by the aforesaid lease, and all his rights under said lease. It was further alleged that the children of Lucile Gruy, and of plaintiff, were minors, and had succeeded to all the rights of their deceased mother. And plaintiff, the father of these children, as the guardian of their estates, and as next friend, brings this suit.

The defendants filed separate answers. The defendant Humble Oil and Refining Company, which will hereinafter be referred to as the Humble Company, answered with a general demurrer, special exceptions, a general denial, and a special denial of all of plaintiff's allegations that the Humble Company has failed to use reasonable diligence in the development of the lease for oil and gas, and pled that it had up to date expended $900,000 in excess of the returns that it had realized from said lease, and that no prudent operator would have done more than had said defendant. That at great expense said defendant had tested the probable producing horizons under said lease for gas, as well as oil, and has proved that said lease can be made to produce gas in paying quantities if and when a market therefor can be obtained. That it hopes to obtain such market and then develop the property further for gas

and thereby recover the losses it has sustained in the development of the property and operation of the lease.

The defendant Reiter-Foster Oil Corporation, answered by a general demurrer, general denial, and plea of not guilty.

In response to special issues the jury answered in substance as follows:

1. That defendants have not developed with reasonable diligence (as that term is defined in the court's charge), the 10,880 acres in question for the production of oil from the Cole and Mirando sands, or either of them.

2. That defendants could not have drilled, between the dates of February 18, 1933 (which was the date of Lucile Gruy's death) and September 4, 1937 (which was the date this suit was instituted by plaintiff for her heirs), on the 10,880 acres in question additional well or wells to the Cole sand (found at a depth of 1,800 feet) from which they could have produced during the life of such wells oil in paying quantities, as that term is defined in the court's charge.

3. That defendants could have drilled, between the dates of February 18, 1933, and September 4, 1937, on the 10,880 acres in question additional well or wells to the Mirando sands (found at a depth of 2,700 feet) from which they could have produced during the life of such wells oil in paying quantities.

Special Issue No. 4, reads as follows: "What amount of money, if any, do you find from a preponderance of the evidence, would the plaintiffs through their guardian, Joseph Gruy, have received since February 18, 1933, out of their one-eighth royalty from the oil that could have been produced from such additional well or wells, if any, had the defendants developed said land with reasonable diligence?"

To which special issue the jury answered, "None."

Plaintiff filed a motion for an instructed verdict that the lease was severable as to each survey and that it had terminated on the 13 surveys comprising 7,680 acres on which production had ceased, and no operations were being carried on at the time the suit was filed, or afterwards; and also filed motion for judgment requiring defendants to develop the land by drilling additional wells to the Mirando sand. These motions were overruled.

The court entered judgment in favor of defendants, upon the motion of the Humble Company and the answer of the jury to special issue No. 4, and against plaintiff, as guardian of the estates of Dagmar Gruy, Viggo Gruy, and Joseph Gruy, Jr., minors, and plaintiff has appealed to this court in such representative capacity.

The first proposition of appellant is to the effect that the finding of the jury in answer to special issues 1 and 2 that appellees did not develop with reasonable diligence the 10,880 acres of land under the lease, and appellees, had they drilled additional wells thereon to the Mirando sand between February 18, 1933, and September 4, 1937, could have produced oil from such wells in paying quantities, and the finding in answer to Special Issue No. 4, that the minor heirs of Lucile Gruy through their guardian, Joseph Gruy, would not have received any money out of their one-eighth royalty from the oil that could have been produced from such additional wells had appellees developed said land with reasonable diligence cannot both be true, and being findings with respect to a definite fact material to a proper judgment in the case, the conflict is fatal, and no judgment could be properly entered thereon.

In the very nature of things if the findings by a jury with reference to a fact material to the judgment are conflicting, no judgment can be entered on either such conflicting finding. And the law is well settled that this is so. Anding v. Queener, Tex.Civ.App., 138 S.W.2d 126; Witcher v. Burt, Tex.Civ.App., 135 S.W. 2d 751; First National Bank v. Rush, Tex. Com.App., 246 S.W. 349; Clark v. Spurdis, Tex.Civ.App., 258 S.W. 881. Of course it is the duty of the court to reconcile the answers of the jury to different issues if the conflict is apparent rather than real. See Tex.Jur., Vol. 41, pp. 1224, 1225. Now in answer to special issue No. 1, the jury found that defendants have not developed with reasonable diligence the 10,880 acres in question for the production of oil from the Cole and Mirando sands, or either of them. In answer to special issue No. 3, the jury found that the defendants could have drilled, between February 18, 1933, and September 4, 1937, on the 10,880 acres in question, additional well or wells to the Mirando sands from which they could have produced during the life of such wells, oil in paying quantities. Then, in the face of these two findings, the jury found, in answer to special issue No. 4 that the royalty owners would have received no money out of their royalty interest produced from such additional wells. Upon its face, the jury's answer to special issue No. 4 contradicts special issues 1 and 3. Without extending this opinion to discuss the answer to special issue 1, it is easy to show that, upon the face of the answers to special issues 3 and 4, there is a conflict. The term "paying quantities", used in the court's charge in connection with the production of oil, is correctly defined by the court as meaning "such an amount of oil from a producing well that would equal the cost of drilling and equipping such well, the cost of producing and marketing the oil therefrom, and yield to the operator a reasonable profit in addition thereto." If by drilling additional wells in the Mirando sand, the defendants could have produced enough oil to make a reasonable net profit on such operations, it is truly difficult to see how the royalty owner, who receives one-eighth of all the oil produced and saved from such additional wells—wells from which even the operator would receive oil in paying quantities—could have failed to receive money therefrom. Appellees seek to reconcile the answers by underscoring that portion of the special issue which states that additional wells could have been drilled between February 18, 1933, and September 4, 1937, from which defendants could have produced *during the life of such wells* oil in paying quantities. We are unable, we confess, to see the force of appellees' argument. According to the jury's finding, in response to special issue No. 3, defendants would have realized a net profit on additional wells, whether it be sooner, or be later. But even if the net profit to defendants would only be realized at a later date than September 4, 1937, it is impossible to see how, if defendants could have drilled additional wells after February 18, 1933, on which they would realize a net profit, the owners of one-eighth of all the oil produced and saved could do other than receive value therefrom. We hold that there is an irreconcilable conflict between the answers to the special issues referred to.

It is unnecessary, we have concluded, to rule on the other assignments of error, as

the error above indicated disposes of this appeal. The judgment of the trial court will accordingly be reversed and the cause remanded for a new trial.

Reversed and remanded.