**AMERICAN NAT. INS. CO. v. WILLIAMS et al.**

**No. 12908.**

Court of Civil Appeals of Texas. Dallas.

Oct. 5, 1940.

Rehearing Denied Nov. 9, 1940.

Brame & Brame, of Sherman, for appellant.

Jot Horton, of Sherman, for appellees.

BOND, Chief Justice.

On July 2, 1934, American National Insurance Company issued an insurance policy on the life of Ruth Marie Copeland, in the sum of $210, with double indemnity for bodily injury, "solely through external, violent and accidental means", resulting in the death of the insured. The policy designated Mattie Bell Love, mother of the insured, as beneficiary. The beneficiary, after the death of insured, divorced her husband, Robert Love, and married J. W. Williams, who joins pro forma in this suit. The policy provides, among the usual provisions in such policies, that "In event of the death of the insured from suicide, whether sane or insane, within two years from the date hereof, the liability of the Company shall be limited to the return of the premiums paid on this policy."

On January 10, 1935, within the period of two years from the date of the policy, the insured died as the result of gunshot wounds inflicted, and, according to plaintiff's petition, "by other persons than the said Ruth Marie Copeland, such other persons being to plaintiffs unknown, and such other wounds, which were injuries to the head of the said Ruth Marie Copeland, having been received in a manner unknown to plaintiffs, and by unknown means"; and, in the alternative, that "such wounds were received through external, violent and accidental means, being gunshot wounds accidentally received by the said Ruth Marie

Copeland occasioned by a gun being accidentally discharged while in her hands * * *", resulting in the death of the insured.

The Insurance Company denied liability, other than for the return of premiums paid, defended the action brought by the beneficiary and the plaintiff S. L. Talley (who claims an assigned interest in the recovery), principally on the suicidal provision of the policy; and, in due time, appropriately tendered all premiums paid ($2.90).

On the primary and alternate theories advanced by plaintiffs: First, that the insured's death was the result of an accident; and, Second, that the insured was a victim of a violent attack intentionally made upon her by an unknown assailant, resulting in her death, the court, on the findings of the jury that the death of the insured resulted solely from external, violent and accidental means and not from suicide, entered judgment in favor of the beneficiary for double indemnity, with penalty and attorney's fees, aggregating the sum of $620.40, and in favor of the plaintiff S. L. Talley for the sum of $292.-50, which the judgment recites "shall be deducted from and is a part of said judgment for $620.40 above provided for in favor of plaintiff Mattie Bell Williams, and when paid to the said S. L. Talley, the same shall operate and be a credit upon the judgment for $620.40" awarded to her.

Upon a careful review of this record, we have been unable to find in evidence a remote suggestion to support the findings of the jury that the death of the insured was the result of an accident, or leading even to a conjecture that her death was caused by accidental means; and we see nothing in the record to rebut the uncontroverted evidence that the insured's death was the result of suicide.

The evidence bearing upon the issue of suicide is, in substance, as follows: The only persons at the house of the insured at the time of the unfortunate occurrence were W. H. Shipley, W. F. Canafax and the insured. W. H. Shipley testified that he was an operator of a taxicab in the City of Denison, and, on the evening of the death of the insured, he took Canafax—at his request—to the home of the insured to get some personal effects which he (Canafax) had left there; that when they went into the home, she (the insured) was lying on a bed, and while Canafax went into the room where the insured was lying, to get his effects, he stood in the doorway. Canafax got his effects, and as he was passing back through the insured's room, she asked him to "kiss her (me) goodbye"; Canafax said "Oh, well, wait a minute", then turned and went out on the back porch. Testifying further, Shipley said: "Miss Ruth (the insured) turned on her side and run her hand under the pillow—she had one hand under the pillow and one hand on top of the pillow—she was laying on her side and whirled over and run her hand under the pillow—she had one hand on top of the pillow and one hand under the pillow, and when she whirled back on her back she come back with a gun right in her temple. * * * I jumped in the middle of the floor and said 'Lord God, Canafax, get in here', and he come in and wanted to know what happened.

"Q. Wait just a minute. You said she whirled and had a gun pointed up against her temple. A. She did.

"Q. Did you hear anything? A. Heard the gun fire.

"Q. Did you see the gun when it fired? A. I did.

"Q. Was it against her temple when it fired? A. It was. * * *".

Shipley testified further that he then called the policeman, George Tinkle, who came and, after prying open her hand, took the pistol out of it, and that she was then dead. The other witness, Canafax, testified that as he passed the insured, lying on the bed in her room, she asked him to "kiss her goodbye", and that, as he came out of the room, going down the steps leading to the ground, he heard a gun fire; he returned to the room and, just as he got to the door, Mr. Shipley said "not to touch her or anything, she shot herself". He further testified: "I looked over and saw her lying on the bed. I saw the gun in her hand. I saw George Tinkle, a policeman in Denison, remove the gun from her hand. He pulled her hand open. I did not touch it." This is all the testimony bearing on the issue of suicide, or the cause of the injury inflicted upon the insured. We have sought for a fact or circumstance which would substantiate a conclusion that the shooting was accidental, or throw suspicion on the parties present, that they, perhaps, had something to do with it. By the evidence, we think, the Insurance Com-

pany established to a moral certainty that the insured intentionally shot herself, inflicting a wound from which she died.

Indeed, the plaintiffs sought to impeach Shipley by imputing to him contradictory statements, made two days after the killing, as to his presence in the room and not being able to see the shooting. It cannot be disputed that the insured was shot at the time testified to by the witnesses, and, just before she was shot, requested Canafax to "kiss her goodbye". The pistol was still in death grip of her hand when the officer arrived. Canafax, from his testimony, appears to have been a friend of the insured's, and Shipley, a mere acquaintance, knew her only by sight. No reason whatever is shown why their testimony should be discredited; they bear no relation to the Insurance Company, and exhibited no enmity toward deceased or the beneficiary, that would justify a suspicion against their truthfulness. The undisputed facts establish that the shooting was intentional to that degree of conclusion which precludes a reasonable doubt to the contrary. No issue is raised by the evidence, as we review this record, of any intention of the insured other than to shoot herself.

Appellees advance the theory that, because there were no powder burns on deceased's head, the bones of which were considerably broken, and the testimony of witnesses that, sometime before the death of the deceased, they saw two men leading her from an outdoor closet to her house, by holding her arms; and that, several days after her death, they saw blood about the bed, on the floor of her room, on the back porch, on a beer bottle and an iron pipe about the place, an issue was indicated, warranting the jury's finding that death was not the result of suicide. Such testimony, at most, could only raise a suspicion of violence inflicted by another, but such, we think, is not inconsistent with the positive testimony of the witnesses that the insured intentionally shot herself.

 Juries are the judges of the weight of the evidence; yet they cannot properly deny lawful weight to undisputed facts. The law enjoins courts to review verdicts of juries in the light of the record, and to set verdicts aside when contrary to the evidence or the law. It appears that the jury in this case, without cause or reason, entirely disregarded the testimony of the only witnesses present at the time and place of the shooting, and found that the injury to the insured was the result of an accident and not of suicide. Such findings, we think, were unauthorized and this court cannot do otherwise than reverse the judgment based upon them. However, it is not altogether improbable that plaintiffs might be able to strengthen their testimony on another trial, thus it becomes our duty to remand the case with instructions to the trial court to direct a verdict in favor of the Insurance Company, in the event the testimony, on another trial, should be as revealed by this record.

There are other assignments of error (many of which will not occur on another trial), duly considered by this court, but, in view of the disposition of this appeal, they are overruled. The judgment of the court below is reversed and the cause remanded.

Reversed and remanded.

## On Motion for Rehearing.

Appellees earnestly insist that the insured was either murdered or accidentally killed, and, if murdered, the beneficiary is entitled to the face of the policy; and, if death resulted from accidental means, the beneficiary is entitled to double indemnity.

Evidently the case was not tried on the theory of murder. The trial court did not submit an issue, and none was requested, on that theory. The jury found that the insured met her death as the result of an accident and not of suicide, and, on such findings, the judgment was entered for double indemnity.

██ There is not a scintilla of evidence that the insured came to her death by accident, and the sum total of the jury's findings is, that the insured was not murdered. Murder is the antithesis of accident; if death resulted from accident, certainly it was not murder. The only testimony surrounding the event of the insured's death was that of the two witnesses mentioned in our original opinion, to the effect that her death was suicidal. Under the terms of the policy, the burden was on the beneficiary to allege and prove the necessary elements of accident in order to recover double indemnity; and on the Insurance Company that the deceased came to her death as the result of suicide, to avoid liability for the face of the policy. The company successfully met the burden; accordingly, appellees' motion for rehearing is overruled.