Frances KRAYER, Appellant,

v.

The PRUDENTIAL INSURANCE COMPA-
NY OF AMERICA, Appellee.

No. 16349.

Court of Civil Appeals of Texas.

Fort Worth.

Sept. 21, 1962.

Rehearing Denied Oct. 19, 1962.

McEntire & Murad, and Rex McEntire, Fort Worth, for appellant.

Cantey, Hanger, Johnson, Scarborough & Gooch, Howard Barker and John Mc-Bryde, Fort Worth, for appellee.

MASSEY, Chief Justice.

The suit was brought by the appellant Frances Krayer, a widow, hereinafter re-ferred to as plaintiff, against the appellee The Prudential Insurance Company of America, hereinafter referred to as the company, to recover on a policy of basic life ($5,000.00), term ($10,000.00), and ac-cidental death ($5,000.00) insurance. The policy insured plaintiff's deceased husband, Kenneth Krayer, who died on or about May 1, 1958, within two years of the effective date of the policy contract. In view thereof and by reason of contractual provisions of the policy, the benefits otherwise payable would not be owed if death was the result of suicide.

Following a trial before a jury, answers returned in the verdict were against suicide, on which theory the company defended the suit, but the company's motion for judgment notwithstanding the verdict was sustained and judgment was entered for the company and that the plaintiff take nothing by her suit. From said judgment the plaintiff ap-pealed.

Judgment reversed and cause remanded. Basically, the author's premise for the pro-priety of such disposition is the want of any evidence warranting the jury's conclusion that death was due to "accident", and the insufficiency (against the great weight and preponderance) of the evidence to support the (negative) jury finding that death was not the result of "suicide". Such a decision does not reject the proposition that violent death must necessarily have resulted from "suicide" or "accident" but exalts the im-portance of a discharge of the burden of proof where a plaintiff must establish "ac-cident" in order to recover one type of in-surance death benefits and where the de-fendant must establish "suicide" to defeat recovery of such plus another type of death benefits also provided by the same policy contract.

We will initially consider the policy bene-fits provided to be paid in the case of acci-dental death. On February 7, 1962, by unanimous opinion, the Supreme Court of this state filed its opinion in the case of Combined American Insurance Company v.

Blanton, Tex., 353 S.W.2d 847. Therein it was stated that though there is a presumption of law against suicide the slightest rebutting evidence by way of facts showing suicide eliminates the presumption. From the opinion of the Supreme Court and the Court of Civil Appeals in the Blanton case it is clear that the evidence showing the fact of suicide may be entirely circumstantial. When the presumption against suicide is so eliminated the plaintiff who would establish liability under a policy of insurance, as to which the defense of suicide is interposed, has the burden of pleading and proving that death resulted due to a cause which was a hazard contemplated by the parties as reflected by the insurance contract. Benefits of the policy under consideration in the Blanton case were payable only upon loss of life from bodily injuries effected by accidental means. As we understand it the essence of the holding was that "suicide" was not a proper ultimate issue in the case but that "accidental means" was the only issue, that the "negative of suicide" was an element thereof (in the nature of inferential rebuttal), that there was no evidence of death by "accidental means", that the burden of proof was upon the claimant of insurance, and that since there was no evidence which discharged the burden judgment for the insurance company was compelled.

In the instant case the facts were primarily circumstantial as in the Blanton case. The deceased had a history of mental illness, but in connection with the particular problem we here consider the evidence bearing thereupon would be merely a part of the whole picture and certainly not controlling. The type of illness shown was that which causes a sufferer therefrom to attach erroneous or pathological significance to ordinary, everyday occurrences and feel that these things refer to him. On an occasion in 1957, about a year prior to that on which he met his death, the deceased had found it a source of extreme agitation that his wife's former husband had not maintained on a current basis support payments for the child of the former husband and his wife. The child was living with the deceased. Apparently deceased attached erroneous or pathological significance to the situation, for because of agitation over the failure of the ex-husband to pay child support he purchased a pistol and ran away from home with the threat that he was going to kill himself. He returned about a week later, however, explaining that "he did not have the guts to end it all". (It is suggested that this condition of fact, once established, is presumed to persist, but we believe that under the evidence such a presumption would not be treated of having persisted. Surely it would vanish along with the presumption against suicide.)

On April 18, 1958, the deceased was laid off his job at a manufacturing plant in Fort Worth. By this time he and his wife had one small child in addition to the child of the wife by the former husband. His wife was expecting another child. Regular obligations were accruing on house and automobile payments. He made efforts to locate another job, but was unsuccessful. He tried to sell encyclopedias for a few days but did not like it and quit. He disappeared the night of April 24–25, 1958. It was later discovered that he had purchased a .22 caliber pistol two days before his disappearance.

On the night of his disappearance his wife retired at about 11:30 P.M. He was in another room watching television and did not retire. His wife awoke at 4:30 A.M. on April 25, 1958, to find that he had left the premises. Some of his clothes and personal effects were gone as was the family automobile. He left a handwritten note which stated, "I think it best that I do it this way. Remember that I love you no matter what happens".

Undoubtedly the date of death was on or about May 1, 1958, some six days after deceased's disappearance. His body was discovered on May 8, 1958. It was in the family automobile in wooded country outside Phenix City, Alabama. The clues con-

cerning his whereabouts in the period between the time he left home and the date of death consisted in an automobile repair order from a garage in Denton, Texas, showing that on April 25, 1958, the garage employees tightened a bolt on the automobile, and the stub of a theater ticket purchased on the same day, between 1:15 P.M. and 2:00 P.M., at a theater in Denton. The repair order and the theater ticket stub were found in deceased's billfold lying on the seat of the automobile beside his body. In her statement to the police of Fort Worth reporting the disappearance of her husband the plaintiff had stated that deceased left with about $109.00. There was a $1.00 bill in the pocketbook and something less than $1.00 in change in deceased's pockets when his body was discovered. His gold wrist watch was on his body when found. His diamond ring was on his body or among the personal effects in the automobile. On the seat alongside the billfold lay small billfold photographs of the plaintiff, the deceased's stepdaughter, and the baby boy of deceased and his wife. The windows of the automobile were closed, and the doors, other than that at the driver's left, were locked. There was no evidence of the presence of any third person in the vicinity of the place where the deceased was found prior to the time of discovery. There had been one or more rains during the week before discovery.

The spectacles of the deceased were lying beside him on the seat by the billfold and photographs. In his left hand lay the revolver purchased two days before leaving Fort Worth. Deceased was ambidextrous—he wrote with his left hand. The shell chamber of the revolver held nine cartridges and when the body was found it contained one fired cartridge and eight unfired shells. The deceased's body was in a sitting position, lying back, but with the shoulders of the body in position as though the upper half had slipped to the left. The right hand was on the seat, but the left was cushioned against his abdomen and against the lower part of the steering wheel. In the left hand was cradled the revolver, with the barrel pointing to the left, toward the left elbow, and with the butt upward. Neither the index nor other finger was caught in the trigger-guard, and the revolver was free in the hand. The "balance" of the revolver is such that if one holding it should release the fingers on the butt and raise the thumb high it will spin into the position in which it was found, though usually with the trigger finger within the guard. Unless the thumb is raised high the revolver "cock" will catch on the thumb.

Counsel for plaintiff argues that the position of the revolver in the hand constituted evidence which entitled the jury to conclude that it had been fired by someone other than the deceased and then placed in his hand. The company, demonstrating the movement of the revolver upon releasing the fingers and raising the thumb while dropping the hand, argues that the only reasonable conclusion is that the revolver was fired by the hand in which it was found. The wound from which the deceased died was caused by a bullet from the revolver in question which entered the head immediately back of the outer corner of the left eye on the line of the side-frame of the deceased's spectacles, or where such would have been but for the removal of these glasses to their position on the seat.

It is our conclusion that the presumption of law against suicide was eliminated in this case by the introduction of the circumstantial evidence showing suicide. We believe we should disregard the jury finding against suicide as having any application to this phase of the case, although, if it did have effect it would be a finding against the great weight and preponderance of the evidence as will be discussed in another part of this opinion. It is our further conclusion that there is a complete want of proof that the death was by accident or by the hand of any third party, i. e., there was no evidence that the death resulted from a hazard contemplated by the parties as reflected by the policy contract. Though applicable to this phase of the case, the issue

of "accident", found in plaintiff's favor by the jury, was never raised by the evidence in the case except upon the pre-existent presumption against suicide which must be treated as having vanished and become obviated. Under the law as established in Combined American Insurance Company v. Blanton, 1962, Tex., 353 S.W.2d 847, plaintiff's right to recover under the accident feature of the policy is foreclosed because there was no evidence that death resulted from accident and it was the obligation of the plaintiff to produce evidence warranting a conclusion that it did.

We do not mean to say that the evidence forecloses the right to recover under the coverages in the policy *other than as applied to accident*. Such phase of the case is not affected by what we have stated above. The defense thereto of suicide was plead by the company, and the burden of proof was upon it in regard thereto. The converse of what we have said concerning the coverage of accidental death would obtain and it would be the obligation of the company to produce evidence on its affirmative defense of suicide. The plaintiff would not be required to introduce any evidence of accident or of suicide.

In order to prevent a recovery under the basic and term life insurance coverage the company's obligation would be to establish by a preponderance of the evidence that the deceased did meet his death as the result of suicide. The jury finding was against such contention. The jury refused to find suicide by a preponderance of the evidence. In view thereof the plaintiff was entitled to a judgment unless the deceased was a "suicide" as a matter of law. By cross-assignment the company contends, in the event of a reversal of the judgment notwithstanding the verdict, that such finding was so against the great weight and preponderance of the evidence as to be manifestly unjust and wrong and such as to require a removal of the case for another trial rather than the entry of a judgment for the plaintiff. In our opinion the court erred in rendering the judgment notwithstanding

the verdict of the jury. However, in view of the whole of the evidence in the record we are of the opinion that the company's cross-assignment of error is good and that the judgment should be reversed and the cause retried.

In the case of Grand Fraternity v. Melton, 1909, 102 Tex. 399, 117 S.W. 788, a judgment for the plaintiff based upon a similar type of case was reversed and judgment rendered for the company. In that case the deceased died from a self-inflicted gunshot wound under circumstances inhibiting a possibility that he might have been shot by a third person. Witnesses were able to talk with the deceased before time of death. The court held that proper construction of the statements of the deceased, coupled with other physical and circumstantial evidence, established facts consistent with suicide and inconsistent with accident. It was further held that the evidence established to a moral certainty that the deceased shot himself with the intent to destroy his life and that therefore judgment for the company was compelled.

In the case of Texas Life Ins. Co. v. Childress, 1918 (Tex.Civ.App., Fort Worth), 204 S.W. 1035, error refused, a judgment for the plaintiff based upon a similar type of case was reversed and rendered for the company. In that case death resulted from the deceased having drunk carbolic acid in his own home under circumstances foreclosing any possibility of foul play by third parties. The deceased was already dead when discovered, but he left a set of letters written either the first or second day before that of his death concerning directions for his burial, the selection of pallbearers at his funeral, the payment of a current grocery bill out of proceeds from his insurance, and the payment of other debts out of insurance to be collected by reason of his death. The court held that the circumstantial and physical evidence conclusively proved intentional suicide.

Mutual Life Ins. Co. v. Tillman, 1892 (Tex. Com. of Appeals), 84 Tex. 31, 19 S.W.

294, was a case wherein the opinion was not adopted by the Supreme Court but did order judgment entered in accord with the recommendation of the Commission of Appeals. In that case the court held that from statements made by the deceased after injury but before he died, coupled with other evidence in the case, established by a preponderance of the evidence not only that the deceased did take his own life with suicidal intent,—but further that it excluded all reasonable doubt that he died from the effects of morphine or opium poison administered by himself. Nevertheless, the judgment was one of remand rather than rendition.

In the case of American Nat. Ins. Co. v. Williams, 1940 (Tex.Civ.App., Dallas), 144 S.W.2d 662, there was an eyewitness to the act of suicide, and the court stated that the evidence in the case established to a moral certainty that the insured intentionally shot herself, inflicting a wound from which she died. There was nothing in the record to rebut the evidence upon which the statement was made. Nevertheless the court remanded the cause for another trial, with the statement that it was not altogether impossible that plaintiffs might be able to strèngthen the testimony in their behalf upon the occasion of another trial.

While we are not entirely satisfied as to the propriety of the action taken in the Tillman and Williams cases mentioned, we are of the opinion that the case before us is not one in which rendition would be proper in the state of the evidence, especially since the jury returned findings against the contentions of the company. There is no direct evidence that the deceased actually did intend to destroy his own life at the time and place in question,—and did in fact accomplish such intent by shooting into his own head with his own hand the bullet which caused the wound from which he died. The evidence is circumstantial, albeit of great force. Certainly the evidence was not conclusive nor did it foreclose every reasonable hypothesis other than suicide. We have found no case in which an appellate court, on facts such as those before us and where suicide was relied upon as an affirmative defense, has not only set aside the verdict of the jury for a claimant, but gone further and rendered judgment in behalf of the defendant company. Contrarily, in instances presenting facts and circumstances much more favorable from the standpoint of the company appellate courts have concluded that the proper order would be to remand rather than to render judgment. We are of the opinion, therefore, that a proper judgment would be one reversing the judgment entered below with the cause remanded for another trial.

It stands self-evident that a complaining party who has been unable to persuade the jury to return an affirmative or "yes" answer to a special issue upon which he carried the burden of proof, and who presents the complaint that the jury's negative or "no" finding is against the great weight of the evidence (or finds insufficient support in the evidence) is burdened with greater difficulty than would be the case were he making like complaint because of an affirmative or "yes" answer returned on an issue as to which the burden was carried by his opponent. Indeed, the author of this opinion once expressed a belief that the application of the law would foreclose any ability to sustain such a contention. See North Texas Producers Association v. Stringer, 1961, Tex.Civ.App., 346 S.W.2d 500, writ ref. n. r. e. He is presently convinced that the belief so expressed in said case was erroneous, and that circumstances could exist such that a negative or "no" finding would be "clearly unjust" (i. e., against the great weight of the evidence or not supported by sufficient evidence), particularly in instances where such would be a finding against the complaining party rather than a mere "refusal" to find for him. The case under consideration on the instant appeal appears to be one where the negative answer of the jury would constitute a mere "refusal" to find the fact of suicide, and is nevertheless one in which we conclude a remand for another trial will be required be-

cause the negative finding returned is against the great weight and preponderance of the evidence.

Although admitting that the trial court did not found its judgment (notwithstanding the verdict of the jury) upon the theory that such material misrepresentations of fact attached to and made a part of the policy were made by the deceased at time of issuance as would entitle the company to avoid liability, as by a recision of the contract, the company contends that judgment should be affirmed upon such theory. Concerning the matter of the deceased having theretofore been a patient in the Buffalo State Hospital in the State of New York, and having been previously treated for or having had a known indication of a nervous or mental disorder, the jury found that the deceased did make misrepresentations of fact material to the risk insured against upon which the company relied and was induced to issue its policy of insurance. However, the jury refused to find that said misrepresentations were made "willfully and with the intent to induce The Prudential Insurance Company of America to issue the policy of life insurance". The statements in question were made in connection with the application of the deceased for the policy and also to the physician who examined him for the company. Sec. 4 of Art. 3.44 of the Texas Insurance Code, V.A.T.S. provides: "That all statements made by the insured shall, in the absence of fraud, be deemed representations and not warranties."

We hold against the contention of the company that the answers returned by the jury would serve to support a judgment on the verdict in its behalf. They constituted representations, not warranties. A warranty enters into and forms a part of the contract itself, defining the limits of the obligation beyond which no liability arises, while a representation made before or at time of the contract presents the elements on which the risk to be assumed is to be estimated. To establish fraud which would entitle one party to a contract to a recision

on account of a false representation he must plead, prove and obtain a fact finding that the representation was a material one, upon which he relied and was induced to act, and that it was made with the intent to induce his entry into the contractual relation. Clark v. National Life & Accident Ins. Co., 1947, 145 Tex. 575, 200 S.W.2d 820, and cases cited. It is to be noted that the company does not contend that it is entitled to such a finding as a matter of law. We do not agree with the company's argument (with authorities cited), that jury findings that the misrepresentations were material to the risk eliminated any necessity to obtain the finding that they were with the intent to induce the contract.

An alternative cross-assignment is that the jury's negative findings or refusal to find that the misrepresentations aforementioned were wilfully made with the intent to induce the issuance of the policy were against the great weight and preponderance of the evidence. Were the company's contention sustained the result could only occasion a remand of the cause were the judgment for the plaintiff upon a phase of the case which we have already determined should be retried for other reasons. However, we will state that we have examined the contention and the cross-point made thereupon and overrule it.

Other contentions of the company by cross-points, even if sustained, could only occasion a remand of the cause for another trial. It would seem unnecessary to pass upon them. They concern the matter of evidence contended to have been erroneously admitted and the argument to the jury bearing thereupon, and also the matter of evidence excluded that the company believes should have been admitted. In view of the necessity of another trial we will state that we have examined the contentions of the company and reached the conclusion that no reversible error is reflected thereby.

Although we are of the opinion that plaintiff would not be entitled to recover on the accident feature of the policy under the

evidence in the record before us we do not believe it would be proper to affirm the trial court's judgment notwithstanding the verdict in such respect. We treat the whole case as embodying an indivisible cause of action and the controversy as a unit and inseparable. 4 Tex.Jur.2d, p. 459, "Appeal and Error—Civil", sec. 874, "Severability of judgment or issues". Despite the fact that the appeal is from a judgment notwithstanding the verdict the appellee company has presented by means of cross-points such error as would have prevented an affirmance of the judgment had same been entered in harmony with the verdict. Hence the proper order would be to remand the cause for a new trial rather than merely to the trial court with instructions to enter judgment and then hear a motion for new trial. Happ v. Happ, 1942 (Tex.Civ.App., San Antonio), 160 S.W.2d 227, 231, writ ref. w. m., interpreting Texas Rules of Civil Procedure, rule 324 "Prerequisites of Appeal".

Judgment reversed and cause remanded for another trial.

BOYD, J., concurs.

RENFRO, J., dissents.

BOYD, Justice (concurring).

I agree to the reversal ordered by the court, but in part for reasons other than those assigned by Chief Justice MASSEY.

RENFRO, Justice (dissenting).

In my opinion suicide is the only reasonable hypothesis that is consistent with the evidence in the case. On authority of Supreme Court decisions, including Combined American Insurance Company v. Blanton, 353 S.W.2d 847, and Grand Fraternity v. Melton, 102 Tex. 399, 117 S.W. 788, I would sustain the trial court's judgment to the effect that the evidence established conclu-sively that the insured's death resulted from suicide, and that there was no evidence of probative force that his death resulted from accidental bodily injuries.

I would affirm the judgment.