**Robert F. RICE, Sr., Appellant,**

v.

**The MORRIS PLAN LIFE INSURANCE COMPANY, Appellee.**

**No. 16747.**

Court of Civil Appeals of Texas.

Fort Worth.

Sept. 23, 1966.

Rehearing Denied Oct. 21, 1966.

---

Tilley, Hyder & Law, and Thos. H. Law, Fort Worth, for appellant.

Kelly, Morris, Walker & Maynard, and Jearl Walker, Fort Worth, for appellee.

## OPINION

MASSEY, Chief Justice.

This suit was for benefits claimed to be due and payable on a life insurance policy covering Robert F. Rice, Jr., who died as the result of a gunshot wound on May 17, 1963. The trial court rendered a judgment *non obstante veredicto* in favor of the insurer, The Morris Plan Life Insurance Company, on the theory that the death resulted from suicide as a matter of law, which precluded recovery.

If in a test of the evidence we become convinced that the fact of suicide was established as a matter of law, judgment should be affirmed. In this particular case the only possible hypothesis would be that death was the result of either accident or suicide.

We are frank to state that but for the opinion of the Supreme Court in Prudential Insurance Company of America v. Krayer, 366 S.W.2d 779 (Tex.Sup., 1963) reversing Krayer v. Prudential Insurance Company of America, 360 S.W.2d 844 (Fort Worth Civ.App., 1962) our conclusion in the instant case would be contrary to that of the trial court. This would be because of the absence of direct evidence which established that the deceased actually did intend to destroy his own life at the particular time and place in question—*and* that he did in fact accomplish such intent by shooting into his own head with his own hand the bullet which caused the wound from which he died. In view of the decision of the Supreme Court in Krayer our conclusion is that the jury necessarily had to resort to pure fantasy and speculation to conclude that the deceased died as the result of a gunshot wound which was accidently inflicted; and that as a matter of law a "take nothing" judgment in favor of the insurance company was compelled in that the fact of suicide was established as a matter of law.

In arriving at such conclusion we have recognized and taken into consideration our obligation to disregard evidence in favor of the insurance company on the material issue where there is contradictory evidence in favor of the beneficiary under the insurance policy. We do not, however, disregard evidence in favor of the insurance company which is not in dispute.

With such done we have the circumstance on Friday May 17, 1963, of a sixteen year old youth, student at a local high school,

whose grades had dropped to such an extent that he was aware of the necessity for, and had reconciled himself to attending summer school in 1963 to do "make up" work; who within a few days of said date had been disciplined or corrected by school authority as the result of improper treatment of a school typewriter; who was scheduled to participate in a conference with his father and an assistant school principal in the office of said official on Monday, May 20, 1963 concerning the difficulties he was experiencing; who in a conversation with a desk-mate friend at about the noon hour on May 17th stated that it was his intent to shoot himself; who experienced a mishap with the automobile of his father (used to transport himself to and from school) on his way home at the end of the school day—in that as result of a defective hood the wind blew the hood up so that it struck against another part of the car "denting" the hood; who arrived at his home and within a few minutes closeted himself in a bedroom where he removed a loaded .38 calibre revolver from its place of storage and was at a point removed therefrom where he could sit on a bench; and who was shot in the head by a bullet therefrom, as result of which death was instantaneous. In connection with what has been said hereinabove we recognize that there was evidence which would entitle a fact finder to conclude that the youth was not emotionally disturbed, unduly at least, by any trouble he had experienced at school, or by the incident as the result of which the automobile was damaged.

The revolver in question was one with which the youth was familiar, having been acquainted therewith in actual field use under the instruction of his father. He had, however, been instructed not to "play with" nor handle the revolver in the absence of his father.

In a reconstruction of some of the circumstances relative to the firing of the fatal shot it was established that the revolver had been fired at a forty-five (45) degree angle, pointing upward, so that the bullet therefrom—after passing through the head of the deceased—struck the wall about five feet from the floor immediately behind a bench situated against the same wall. Further, the bullet entered the deceased's forehead at about the center and passed out of the back of his head about the back hairline at approximately the juncture of the spine. The nature and shape of the wound at point of bullet entry and presence of powder particles inside the wound were of such nature as would have necessarily required the muzzle of the gun to be either adjacent or in near proximity to the head when it was discharged. The shell was so marked by the firing pin as to establish that the revolver had been at "full cock" when the force was applied which occasioned the striking of the pin against the loaded shell. In the instant case there was conflicting evidence upon the matter of whether jarring as by a drop on the floor would or would not permit or cause the revolver to fire. Therefore, we are obliged to treat it as a weapon which would fire as the result of such an occurrence.

It is the theory of the insurance company that the deceased youth held out in front of his forehead the "cocked" revolver, and intentionally discharged it by pressure on the trigger by a thumb. The theory of its adversary is that he dropped it while in a "cocked" position to that it struck butt-foremost against the carpeted floor and as result thereof was accidentally discharged.

To find in accord with the latter theory it would be necessary to believe that the deceased bent over to regain control of the dropped revolver so quickly (whether from a seated or standing position) that he simultaneously got his forehead in close proximity to its barrel when the butt struck the floor. The jury would, furthermore, necessarily have been obliged to believe that in grasping for the falling weapon the deceased tilted his head forward much further than would be the case as applied to one looking at an object he was seeking to grasp. Evidently the jury accepted such theory for their finding was in accord.

**12**

But, as previously stated, it is our opinion that in order to so find the jury had to resort to pure fantasy and speculation. Under evidence, aside from speculation, a judgment of suicide was compelled. The jury's finding having been to the contrary the trial court correctly rendered judgment *non obstante veredicto*.

Judgment is affirmed.